**The PEOPLE of the State of Colorado,**
**Plaintiff–Appellee,**

v.

**Russell Millard HAMPTON,**
**Defendant–Appellant.**

**No. 91CA1057.**

Colorado Court of Appeals,
Div. I.

Nov. 19, 1992.

Rehearing Denied Jan. 7
and Jan. 28, 1993.

Certiorari Granted Sept. 7, 1993.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Laurie A. Booras, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Callaway, Turner & Timmins, John Turner, Colorado Springs, for defendant-appellant.

Opinion by Chief Judge STERNBERG.

Defendant, Russell Millard Hampton, appeals the denial of his Crim.P. 35(c) motions to set aside his habitual criminal conviction. We affirm.

In 1984, defendant was found guilty of and was sentenced for first degree sexual assault and habitual criminality. He appealed his conviction raising issues related to his sexual assault conviction. This court's reversal of his conviction, *People v. Hampton*, 728 P.2d 345 (Colo.App.1986), was subsequently reversed by the supreme court, 746 P.2d 947 (Colo.1987), and we issued a mandate affirming the 1984 conviction on January 19, 1988.

In June 1989, defendant filed his first *pro se* Crim.P. 35(c) motion which he supplemented in October 1989, alleging erroneous jury instructions in the habitual criminal phase of the trial. The public defender was appointed to represent the defendant and filed another Crim.P. 35(c) motion on January 17, 1991, just within three years from the date of issuance of the mandate. That motion reiterated defendant's assertions of error.

Defendant's Crim.P. 35(c) motions were submitted to the trial court on the briefs. After reviewing the briefs, the trial court determined that defendant's motions were timely under § 16–5–402, C.R.S. (1986 Repl. Vol. 8A). Nevertheless, the trial court rejected defendant's motions on the merits, concluding that the jury instructions were not constitutionally infirm.

On appeal, defendant contends that he was denied his constitutional right to a fair trial by 1) the court's failure to instruct on the presumption of innocence at the habitual criminal phase of the trial; 2) improper instructions as to the elements of the habitual criminal charge; and 3) the use of a defective verdict form.

I.

As a threshold matter, we consider, but reject, the People's contention that the defendant's Crim.P. 35(c) motions are untimely under § 16–5–402, which establishes a three year statute of limitations for collateral attacks on felony convictions.

We agree with the People's contention that, because the defendant's conviction did not antedate the effective date of the statute, he does not fall within the five-year grace period established in *People v. Fagerholm*, 768 P.2d 689 (Colo.1989). And, we note that Crim.P. 35(c) motions are included in the term "collateral attack" as used in § 16–5–402. *People v. Robinson*, 833 P.2d 832 (Colo.App.1992).

We conclude, however, that since defendant's Crim.P. 35(c) motions were filed within three years after his conviction was affirmed on appeal, his motion is timely.

Section 18–1–410(1), C.R.S. (1986 Repl. Vol. 8B), which is the basis for Crim.P. 35(c)(2) and contains identical language, provides in pertinent part:

Notwithstanding the fact that no review of a conviction of crime was sought by appeal within the time prescribed therefor, or that a judgment of conviction was

**444**

affirmed upon appeal, every person convicted of a crime is entitled as a matter of right to make application for postconviction review....

Our primary task in construing a statute is to ascertain and give effect to the intent of the General Assembly. *Charnes v. Boom,* 766 P.2d 665 (Colo.1988). To discern legislative intent, a court should look first to the statutory language. *People v. Warner,* 801 P.2d 1187 (Colo.1990). Statutory words and phrases should be given effect according to their plain and ordinary meaning. And, the statute must be read and considered as a whole. *People v. District Court,* 713 P.2d 918 (Colo.1986).

Here, giving effect to the plain and ordinary meaning of the words and phrases contained in the statute, we discern that the General Assembly has recognized the inherent infirmity in an unconstitutional conviction by granting every person convicted of a crime the right to make application for postconviction review, notwithstanding the fact that no appeal was taken from the conviction or, if taken, that the appeal was unsuccessful. *People v. Germany,* 674 P.2d 345 (Colo.1983).

■ Moreover, the very purpose of § 18–1–410(1) is to provide a postconviction remedy subsequent to an appeal to review constitutional error made at trial. *See Lucero v. People,* 173 Colo. 94, 476 P.2d 257 (1970).

However, § 16–5–402 establishes a statute of limitations for collateral attacks on criminal convictions. It provides that no person who has been convicted shall collaterally attack the validity of that conviction unless such attack is commenced within the applicable time period following the date of the conviction. Hence, the date of conviction triggers the running of the applicable period of limitations. By enacting § 16–5–402, the legislature intended to avoid litigation over stale claims and to avoid frustration of the statutory provisions directed at repeat, prior, and habitual offenders. *People v. Robinson, supra.*

■ If a statute, such as the postconviction review provision, potentially conflicts

with other statutes, like the statute of limitations on collateral attacks, a court must attempt to harmonize the statutes in order to give effect to their purposes. *People v. T.O.,* 696 P.2d 811 (Colo.1985). Hence, we must determine when a conviction occurs for purposes of § 16–5–402, if a defendant appeals his criminal conviction.

In making such determination, we must presume that the General Assembly intended a just and reasonable result. Section 2–4–201(1)(c), C.R.S. (1980 Repl.Vol. 1B). However, if a defendant were required to file a postconviction motion within three years of his conviction without taking into consideration time for appeal, then he or she might have to choose between two rights afforded a criminal defendant. The convicted defendant could appeal the conviction as of right, § 16–12–101, C.R.S. (1986 Repl.Vol. 8A), or such defendant could file a postconviction motion. Section 18–1–410(1). The General Assembly clearly did not intend such a result.

Further, if a convicted defendant is required to file a postconviction motion within three years after conviction in the trial court, it could waste judicial resources. The defendant's conviction could be on appeal and be subsequently reversed, while at the same time he would be required to file a postconviction motion to preserve his postconviction rights.

Moreover, once an appeal has been perfected, the trial court has no jurisdiction to issue further orders in the case relative to the order or judgment appealed from. *People v. Dillon,* 655 P.2d 841 (Colo.1982). Therefore, even though a defendant might have to file a postconviction motion during the pendency of his appeal, the trial court could not proceed on such motion.

■ Consequently, we hold that for purposes of § 16–5–402 and postconviction review, a conviction occurs when the trial court enters judgment and sentence is imposed, if there is no appeal. If an appeal is pursued, then the conviction is not final for purposes of § 16–5–402 and postconviction review until the appellate process is exhausted.

■ Here, the ultimate status of the defendant's conviction was not determined until January 1988, when our mandate was issued. Defendant's conviction was on appeal in October 1987, when the statute of limitations for defendant's collateral attack would have expired under the time limitations set forth in § 16–5–402. Therefore, we conclude that when defendant's case was affirmed by the supreme court, upon the issuance of the mandate by this court, the time commenced to file his postconviction motion. Thus, defendant's motions were timely.

## II.

Regarding the issues raised in defendant's postconviction motion, we find no merit in his contentions that the trial court failed to instruct the jury properly during the habitual criminal phase of his trial.

■ No objection was raised to the alleged insufficiency of the instructions. Accordingly, defendant's claims must be considered under the plain error standard of review. Crim.P. 52(b). Under this standard, the record must show that the error so undermined the basic fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *Wilson v. People,* 743 P.2d 415 (Colo.1987).

### A.

■ Defendant first asserts that the trial court's failure to instruct on the presumption of innocence at the habitual criminal phase of the trial deprived him of his constitutional right to a fair trial.

Here, the jury was instructed on the presumption of innocence during the sexual assault phase of the trial. Although this instruction was not repeated at the habitual criminal phase, the court did remind the jury that all earlier instructions applied.

We see nothing to distinguish this case from *People v. Montoya,* 640 P.2d 234 (Colo.App.1981), in which we held that when the court gave an instruction on the defendant's right to remain silent at the first phase of the trial, and reminded the jury that prior instructions remained in ef-

fect for the habitual criminal phase, its failure to repeat the instruction concerning the defendant's right not to testify at the second phase was not reversible error.

Defendant's reliance on *People v. Hill,* 182 Colo. 253, 512 P.2d 257 (1973) and *People v. Aragon,* 665 P.2d 137 (Colo.App. 1982) is misplaced. These cases are distinguishable in that in both instances, contrary to here, the trial court failed to instruct the jury on the presumption of innocence during the substantive phase of the trial.

### B.

We also reject defendant's claim that the jury instructions on the elements of habitual criminality were defective.

■ He argues that the elemental instruction should have contained the dates of judgment and conviction of the prior felonies. However, this information was included in the first instruction which identified the allegations in the information regarding defendant's prior felony convictions. Reading the instructions as a whole, we find they are not misleading or confusing as to the dates of judgment and conviction of the prior felonies. *See Gann v. People,* 736 P.2d 37 (Colo.1987).

■ Defendant also argues that the court erred in failing to instruct the jury under CRE 201(g) that it need not accept as conclusive any fact judicially noticed. The trial court instructed the jury that the jury's finding defendant guilty of first degree sexual assault satisfied the requirement that an habitual criminal must be convicted of a felony for which the maximum penalty prescribed by law exceeds five years.

CRE 201(g) applies only to adjudicative facts. Because the classification of a defendant's offense is a question of law, no instruction pursuant to CRE 201(g) was required. *Massey v. People,* 649 P.2d 1070 (Colo.1982).

■ We do not address the other issues concerning the elemental jury instructions

raised by the defendant because they were not raised in his original Crim.P. 35(c) motion. *See People v. McClellan*, 183 Colo. 176, 515 P.2d 1127 (1973) (allegation not raised in postconviction relief motion not properly before the court for review).

Accordingly, we conclude that the record does not show that the instructional error, if any, so undermined the basic fairness of the trial to cast serious doubt on the reliability of the judgment of conviction. *See Wilson v. People, supra.*

### III.

Finally, defendant contends that the verdict form used in the habitual criminal phase was defective because it did not require the jury to make separate findings as to each prior conviction and that such defect constitutes plain error. We disagree.

At trial, defendant tendered no alternative verdict forms and accepted the form now challenged without objection. Thus, a plain error standard of review applies. *People v. Guffie*, 749 P.2d 976 (Colo.App. 1987). Accordingly, defendant must show that the verdict form contained errors which both affected a substantial right and cast serious doubt on the reliability of the jury's findings of habitual criminality. *People v. Romero*, 767 P.2d 782 (Colo.App. 1988).

While the better practice is to submit to the jury separate verdict forms as to the prior convictions, *Coppinger v. People*, 152 Colo. 9, 380 P.2d 19 (1963), under the circumstances of this case, we conclude that the failure to submit separate verdict forms on each prior conviction did not cast serious doubt on the reliability of the jury's finding of habitual criminality.

The uncontroverted evidence at the habitual criminal phase of the trial indicated that defendant had been previously convicted of robbery of a federally insured bank and of theft. These convictions arose out of separate and distinct criminal episodes. *See* § 16–13–101(1), C.R.S. (1986 Repl.Vol. 8A).

Further, the prosecution presented evidence of the judgment of convictions on both felonies, including pen packets from the respective correctional facilities. The pen packets included pictures and fingerprints of the defendant. The fingerprint cards were compared with defendant's fingerprints obtained when booked on the sexual assault charge in this case.

Hence, we conclude that the verdict form was adequate to demonstrate that the jury unanimously agreed that defendant was the same person identified in the prosecution's documents and that he was previously convicted of each of the subject felonies.

Order affirmed.

NEY and DAVIDSON, JJ., concur.