**The PEOPLE of the State of Colorado, Petitioner/Cross–Respondent,**

v.

**Russell Millard HAMPTON, Respondent/Cross– Petitioner.**

No. 93SC77.

Supreme Court of Colorado, En Banc.

May 9, 1994.

As Modified on Denial of Rehearing June 6, 1994.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John Daniel Dailey, Deputy Atty. Gen., Robert Mark Russel, First Asst. Atty. Gen., Laurie A. Booras, Asst. Atty. Gen., Crim. Enforcement Section, Denver, for petitioner/cross-respondent.

Callaway & Turner, John Turner, Colorado Springs, for respondent/cross-petitioner.

David F. Vela, Colo. State Public Defender, Thomas R. Williamson, Deputy State Public Defender, Denver, as amicus curiae Colo. State Public Defender on Behalf of respondent/cross-petitioner.

Justice VOLLACK delivered the Opinion of the Court.

We granted certiorari to review the court of appeals decision in *People v. Hampton*, 857 P.2d 441 (Colo.App.1992), to determine whether the time limits imposed by section 16–5–402(1), 8A C.R.S. (1986), for collateral attack on a conviction begin to run after the conviction in the trial court or after the appellate process is exhausted, where there has been a direct appeal of the conviction.[1] We also granted certiorari to decide whether section 16–5–402(1), 8A C.R.S. (1986), applies to a collateral attack on a habitual criminal adjudication.

The People petitioned this court to review the decision of the court of appeals holding that the time limits imposed by the statute do not begin to run until after the final decision on appeal. The defendant cross-petitioned, asserting that section 16–5–402, 8A C.R.S. (1986), does not apply to attacks on habitual criminal adjudications.

The trial court held that the defendant's Crim.P. 35(c) motion was timely made when it was brought within three years after his conviction was affirmed on appeal. The issue of whether the statute applies to attacks on habitual criminal adjudications was not before the court of appeals or the trial court,

---

1. The relevant portion of the statute states:

 **Limitation for collateral attack upon trial judgment.** (1) Except as otherwise provided in subsection (2) of this section, no person who has been convicted under a criminal statute ... shall collaterally attack the validity of that conviction unless such attack is commenced within the applicable time period, as provided in this subsection (1), following the date of said conviction:

 | | |
 |---|---|
 | All class 1 felonies: | No limit |
 | All other felonies: | Three years |
 | Misdemeanors: | Eighteen months |
 | Petty offenses | Six months |

 § 16–5–402(1), 8A C.R.S. (1986).

but we now address it to better define the scope of postconviction review.

We affirm the ruling of the court of appeals and hold that the time limits of section 16–5–402, 8A C.R.S. (1986), do not begin to run until after a defendant's appeal has been exhausted. We further hold that, because a habitual criminal adjudication is one component of the overall conviction, collateral attacks are properly analyzed and limited under section 16–5–402, 8A C.R.S. (1986).

## I.

The defendant, Russell Hampton (Hampton), was found guilty in 1984 of first degree sexual assault [2] and was adjudicated a habitual criminal.[3] The trial court originally sentenced him to thirty-five years' imprisonment, but in response to Hampton's motion, reduced the sentence to thirty years. On direct appeal, the court of appeals reversed Hampton's conviction on an issue unrelated to those now being raised. *People v. Hampton*, 728 P.2d 345 (Colo.App.1986). In *People v. Hampton*, 746 P.2d 947 (Colo.1987), this court reversed the court of appeals and ordered that the conviction be reinstated. Accordingly, on January 19, 1988, the court of appeals issued a mandate affirming Hampton's conviction.

Hampton later sought postconviction relief under Crim.P. 35(c), challenging several aspects of the habitual criminal phase of his trial. On June 30, 1989, he filed a *pro se* Crim.P. 35(c) motion, alleging that he had been denied effective assistance of counsel at trial. On October 29, 1989, he supplemented that motion, asserting errors in the instructions and verdict form presented to the jury. On January 17, 1990, the public defender filed a new Crim.P. 35(c) motion on Hampton's behalf, reiterating the claims of ineffective assistance of counsel and instructional error.

2. § 18–3–402, 8B C.R.S. (1973).

3. § 16–13–101(1), 8A C.R.S. (1973).

4. We note that the trial court was incorrect in applying the five-year grace period announced in *People v. Fagerholm*, 768 P.2d 689 (Colo.1989), to

At a March 7, 1991, hearing, the prosecution asserted that Hampton's motions were barred because they had not been filed within the three-year limitations period set forth in section 16–5–402, 8A C.R.S. (1986). The trial court, citing the statute and, alternatively, *People v. Fagerholm*, 768 P.2d 689 (Colo.1989) (allowing a five-year grace period for collateral attacks made under section 16–5–402(1), 8A C.R.S. (1986)), rejected this argument and found that Hampton's motions had been timely raised.[4] The trial court addressed the merits of Hampton's motions and denied his claims for relief.

The court of appeals affirmed the trial court's decision, and held that Hampton's Crim.P. 35(c) motions had been filed within the time limits set out in section 16–5–402(1), 8A C.R.S. (1986). The court of appeals ruled that, "for purposes of § 16–5–402 and postconviction review, a conviction occurs when the trial court enters judgment and sentence is imposed, if there is no appeal. If an appeal is pursued, then the conviction is not final for purposes of § 16–5–402 and postconviction review until the appellate process is exhausted." *People v. Hampton*, 857 P.2d 441, 444 (Colo.App.1992). In this case, the time limits of section 16–5–402(1) did not begin to run until January 19, 1988, the date on which Hampton's conviction was affirmed on appeal. Because Hampton filed his motions within three years of that date, the court of appeals concluded they were timely filed under the statute.

## II.

The prosecution claims that the court of appeals erred in ruling that the time limits imposed by section 16–5–402(1) do not begin to run until a defendant's appeal has been exhausted. The prosecution asserts that the use of the word "conviction" in the statute means no more than entry of the judgment and imposition of the sentence, and does not include the time during which a defendant

this case. We agree with the court of appeals that, because Hampton's conviction did not antedate the effective date of the statute, he does not fall within the five-year grace period of *Fagerholm*.

pursues his appeal. The prosecution claims that including appeals within the statutory time limits frustrates the policy behind section 16–5–402(1).

### A.

Section 16–5–402(1) establishes a statute of limitations for collateral attacks on the validity of a conviction. A defendant may only raise a collateral attack if it is brought within the time limits of the statute, or if the case meets one of the exceptions of section 16–5–402(2), 8A C.R.S. (1986).[5]

The purpose behind section 16–5–402(1) is to avoid litigation over stale claims by prohibiting collateral attacks on past convictions if not commenced within specific time periods. *People v. Fagerholm*, 768 P.2d 689, 691 (Colo.1989). The statute is applicable to Crim.P. 35(c) motions and does not violate the Colorado or United States Constitutions. *People v. Wiedemer*, 852 P.2d 449 (Colo.1993).

The question we address is whether the time limits imposed by section 16–5–402(1) begin to run upon conviction in the trial court, or whether they do not run during the pendency of an appeal.

### B.

Our decision turns on the meaning of "conviction" as it is used in the statute. Our primary task in construing a statute is to ascertain and give effect to the intent of the legislature. *Charnes v. Boom*, 766 P.2d 665 (Colo.1988). We look first to the language of the statute. *People v. Warner*, 801 P.2d 1187 (Colo.1990). Statutory words and phrases are given effect according to their plain and ordinary meaning. *Charnes v. Lobato*, 743 P.2d 27 (Colo.1987). We read and consider the statutory scheme as a whole to ascertain

the intent of the legislature. *R & F Enterprises, Inc. v. Board of County Comm'rs of Adams County*, 199 Colo. 137, 606 P.2d 64 (1980).

The meaning of "conviction" may vary depending on the statute in which it is used. Generally, however, a conviction is not final and has no legal force until after appeals have been exhausted. *See, e.g., Zoske v. People*, 625 P.2d 1024, 1025 (Colo.1981) (finding that a conviction for driving under the influence of intoxicating liquor became final "when the judgment of conviction is rendered, the availability of appeal exhausted, and time for discretionary review has elapsed"); *People v. Carter*, 186 Colo. 391, 395, 527 P.2d 875, 877 (1974) ("We again reiterate, with the expectation that the running argument is finally settled, that for the purposes of reviewing and granting relief from sentences validly imposed the judgment and sentence is not final until after appellate remedies for review have been exhausted."); *Read v. Read*, 119 Colo. 278, 202 P.2d 953 (1949) (holding that, although the wife had been twice convicted at trial of the murder of a couple's daughter, the husband still had a duty of support and could not be granted a divorce because, until the wife's appeals were completed, she had not been convicted of a felony for which the husband could maintain an action in divorce).

However, we have found that, for the purposes of using a prior conviction as a statutory aggravator in the sentencing phase of a death penalty trial, a conviction means a judgment of conviction in the trial court, not a final determination of conviction after appeal. *People v. District Court*, 191 Colo. 558, 554 P.2d 1105 (1976). In that case, we held that the legislative intent was clear that "convicted" meant convicted at trial and that a

5. Section 16–5–402(2), 8A C.R.S. (1986), provides the following exceptions:

(a) A case in which the court entering judgment of conviction did not have jurisdiction over the subject matter of the alleged offense;

(b) A case in which the court entering judgment of conviction did not have jurisdiction over the person of the defendant;

(c) Where the court hearing the collateral attack finds by a preponderance of the evidence that the failure to seek relief within the applicable time period was caused by an adjudication of incompetence or by commitment of the defendant to an institution for treatment as a mentally ill person; or

(d) Where the court hearing the collateral attack finds that the failure to seek relief within the applicable time period was the result of circumstances amounting to justifiable excuse or excusable neglect.

practical application of the statute required that result.

> If a sentencing hearing were to be postponed until all appeals of another case or cases had been finally determined, the resulting situation would be chaotic. Further, the statute provides that the sentencing hearing should be before the same jury which tried the defendant's guilt. Obviously, an empanelled jury cannot be held in cold storage for thawing out and use years later.

*Id.* at 560, 554 P.2d at 1106. The definition of conviction in this case reflects the unique situation of using a conviction for sentence-enhancement purposes. It is unlike the other applications of the definition of conviction that are noted above.

Based on these cases, we hold that the meaning of the word "conviction" in section 16–5–402(1) refers to a conviction after a defendant's appeal has been exhausted.[6]

### C.

We also find it instructive to look to Crim.P. 35(b) for guidance. Crim.P. 35(b) provides an opportunity for a defendant convicted in the trial court to move to reduce his sentence. It allows the motion to be made either after the sentence is imposed by the trial court or after an appellate court has reviewed the case. The rule states:

> **Reduction of Sentence.** The court may reduce the sentence provided that a motion for reduction of sentence is filed (1) within 120 days after the sentence is imposed, or (2) within 120 days after receipt by the court of a remittitur issued upon affirmance of the judgment or sentence or dismissal of the appeal, or (3) within 120 days after entry of any order or judgment of the appellate court denying review or

having the effect of upholding a judgment of conviction or sentence.

Crim.P. 35(b). We must endeavor to harmonize the Rules of Criminal Procedure. Neither section 16–5–402(1) nor Rule 35(c) specifically addresses whether the period of appeal is included in the time limits of the statute. However, we find it instructive to note that the limitation period of Crim.P. 35(b) does not run while an appeal is pursued. Reading the rules together, we find support for the conclusion that section 16–5–402(1) and Crim.P. 35(c) require that the limitations period not run during the pendency of an appeal.

### D.

■ We next address the influence of other statutes on the determination of whether the time limits of section 16–5–402(1) run during the appeal process. The legislature guaranteed postconviction relief in section 18–1–410, 8B C.R.S. (1986):

> Notwithstanding the fact that no review of a conviction of crime was sought by appeal within the time prescribed therefor, or that a judgment of conviction was affirmed upon appeal, every person convicted of a crime is entitled as a matter of right to make applications for postconviction review.

§ 18–1–410(1), 8B C.R.S. (1986). If a statute potentially conflicts with another statute, a court must attempt to harmonize them to effectuate their purposes. *People v. T.O.,* 696 P.2d 811 (Colo.1985).

There is a potential conflict between statutory provisions in this case. Here, section 18–1–410 guarantees the right to postconviction review, even after a conviction has been affirmed on appeal. Section 16–5–402(1) places time limits on postconviction review, but does not specify whether the time limits

---

**6.** We find no disparity between our holding in this case and our holding in *People v. Thomas,* 867 P.2d 880 (Colo.1994). In *Thomas,* a majority of this court held that § 16–5–402(3), 8A C.R.S. (1986), violated a defendant's right to due process because it unduly restricted his ability to collaterally attack a conviction after appeal. This court contrasted §§ 16–5–402(1) and 16–5– 402(2) with § 16–5–402(3), and found that while the legislature intended to permit post-conviction review in the first two sections, it appeared to deny such relief in the third section. A strict application of § 16–5–402(3) would nullify the purpose behind §§ 16–5–402(1) and 16–5–402(2). The *Thomas* opinion resolved this conflict, in

run during an appeal.[7] Finally, a convicted defendant has the right to appeal his conviction. § 16–12–101, 8A C.R.S. (1986). As the court of appeals noted, if a defendant were required to file a motion for postconviction relief within three years of his conviction without taking into account the appeal period, then he might have to choose between the right to appeal and the right to postconviction review. *People v. Hampton,* 857 P.2d 441, 444 (Colo.App.1992).

### E.

We believe that the language of the statutes, our prior consideration of the meaning of the word "conviction," and the guidance of Crim.P. 35(b) require the conclusion that the use of the word "conviction" in section 16–5–402(1) includes the time that an appeal is pending.[8] The time limits imposed by section 16–5–402(1) shall not begin to run until after the defendant's appeal has been exhausted.

### III.

On cross-appeal, Hampton raises for the first time the issue of whether section 16–5–402(1) applies to a collateral attack on a habitual adjudication. We address this issue to further define the scope of postconviction review of habitual adjudications.

Hampton asserts that, because an adjudication of habitual criminality is not a substantive offense, it is not a conviction to which section 16–5–402(1) may be applied. Hampton is correct in stating that a habitual adjudication does not involve a new crime or a substantive offense. *People v. Watkins,* 684 P.2d 234 (Colo.1984); *Wright v. People,* 116 Colo. 306, 181 P.2d 447 (1947). Following Hampton's argument to its logical end,

however, one would conclude that because an adjudication of habitual criminality is not a "conviction," not only is it not affected by section 16–5–402(1), but it also need not be afforded the benefit of any postconviction review. We decline to adopt such a harsh standard.

Hampton misunderstands the relationship between an adjudication of guilt and an adjudication of habitual criminality. The habitual criminal statute, section 16–13–101, 8A C.R.S. (1986), merely provides that the court, after the defendant has been found guilty of a crime, must consider former convictions in imposing its sentence. *Wright,* 116 Colo. 306, 181 P.2d 447. The statute prescribes circumstances under which a defendant who has been found guilty of a specific crime may be more severely penalized because of his previous criminal activity. *Casias v. People,* 148 Colo. 544, 367 P.2d 327 (1961), *cert. denied,* 369 U.S. 862, 82 S.Ct. 952, 8 L.Ed.2d 20 (1962). An adjudication of habitual criminality does nothing more than characterize the status of the guilty defendant and inform the sentencing decision. *Goodman v. Kunkle,* 72 F.2d 334 (7th Cir.), *cert. denied,* 293 U.S. 619, 55 S.Ct. 218, 79 L.Ed. 707 (1934).

A trial that involves an adjudication of habitual criminality is bifurcated and proceeds in two phases. In the information, the district attorney lists the substantive offenses with which the defendant is currently charged, and also brings an additional count for each prior conviction that will later be used to adjudicate the defendant a habitual criminal. The first phase of the trial determines whether the defendant is guilty of the substantive offenses with which he is charged. If the defendant is found guilty, the trial proceeds to the second, or sentencing, phase. During this phase, the prosecu-

---

ruling that § 16–5–402(3) was unconstitutional, and was severable from the rest of the statute.

**7.** In *People v. Wiedemer,* 852 P.2d 424 (Colo. 1993), we suggested that the time limitations of § 16–5–402(1) do not conflict with, but merely supplement, the provisions of § 18–1–410. *Id.* at 432.

**8.** The need for judicial economy and efficiency also supports this conclusion. After the notice of appeal is filed, the trial court loses jurisdiction to

rule on Crim.P. 35(c) motions. *People v. Bossert,* 722 P.2d 998 (Colo.1986); *see also Valdez v. District Court,* 720 P.2d 974 (Colo.1986). If a defendant were forced to file his Crim.P. 35(c) motion while his appeal was pending, the case would have to be remanded to the trial court, and the record returned, for a determination of the Crim.P. 35(c) motion. During this time, the appeal would be suspended. The result would be delays in appeals and the final disposition of cases.

tion seeks to prove that the defendant was previously convicted of the prior crimes listed in the indictment. If the prosecutor has met the burden, the trial judge will adjudicate the defendant a habitual criminal and impose an enhanced sentence. If the prosecutor has not met the burden, the defendant is sentenced according to the statutory provisions for sentencing on the substantive crimes. The habitual adjudication is only one component of the entire process of conviction. Its purpose is to direct the court as to the sentence that should be imposed.

 An adjudication of habitual criminality—a component of sentencing—is an integral part of a conviction, not a separate conviction. A separate collateral attack under Crim.P. 35(c) on a habitual adjudication is therefore inappropriate. When a defendant raises a Crim.P. 35(c) motion for postconviction review, he should include any attacks on the habitual criminal determination that are then available. He need not, and should not, request separate review under Crim.P. 35(c) of the guilt phase and habitual criminal phase of his trial. Such an approach is an illogical separation of two integral parts of his conviction. Hampton's collateral attack on infirmities related to the adjudication of habitual criminality was therefore correctly considered under section 16–5–402(1).[9]

## IV.

We affirm the decision of the court of appeals and hold that the time limits of section 16–5–402(1) do not begin to run until a defendant's appeal has been exhausted. We further hold that section 16–5–402(1) applies to infirmities associated with the habitual criminal phase of a trial.

---

**9.** In Hampton's Crim.P. 35(c) motion at issue here, he raised infirmities only with the habitual criminal phase of his trial. He is precluded from raising additional issues because the time limits of § 16–5–402(1) have run. A defendant may, of course, choose to bring in his Crim.P. 35(c) motion issues related only to the adjudication of habitual criminality.