The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
March 26, 2020

## 2020COA48

## No. 17CA1815, *People v. Hunsaker* — Criminal Procedure — Postconviction Remedies — Correction of an Illegal Sentence

This opinion considers whether the holding in *Leyva v. People*, 184 P.3d 48, 50-51 (Colo. 2008) — that the correction of an illegal sentence resets the three-year limitations period for filing a Crim. P. 35(c) motion — applies to any collateral attack that a defendant might assert, or, alternatively, only to those claims that relate to how the illegality in that sentence potentially affected the defendant's original convictions.  Disagreeing with *People v. Baker*, 2017 COA 102, *rev'd on other grounds*, 2019 CO 97M, the majority concludes that the correction of an illegal sentence only resets the time period for filing a Crim. P. 35(c) motion for those claims that relate to how the illegality in the sentence potentially affected a defendant's original convictions.

COLORADO COURT OF APPEALS                                    **2020COA48**

Court of Appeals No. 17CA1815
Larimer County District Court No. 03CR1173
Honorable Devin R. Odell, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

William J. Hunsaker, Jr.,

Defendant-Appellant.

ORDER AFFIRMED

Division VI
Opinion by JUDGE GROVE
Graham*, J., concurs
Richman, J., concurs in part and dissents in part

Announced March 26, 2020

Philip J. Weiser, Attorney General, Megan C. Rasband, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Hunsaker Emmi, P.C., William J. Hunsaker, Golden, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2019.

¶ 1    In this appeal, we decide whether the holding in *Leyva v. People*, 184 P.3d 48, 50-51 (Colo. 2008) — that the correction of an illegal sentence resets the three-year limitations period for filing a Crim. P. 35(c) motion — applies to any collateral attack that a defendant might assert, or, alternatively, only to those claims that relate to how the illegality in that sentence potentially affected the defendant's original convictions.  We conclude that the correction of an illegal sentence only resets the time period for filing a Crim. P. 35(c) motion for those claims that relate to how the illegality in the sentence potentially affected a defendant's original convictions.  For that reason, all but one of the claims asserted by defendant, William J. Hunsaker, Jr., in his Crim. P. 35(c) motion are untimely.  And, because the timely claim may be denied as a matter of law, we affirm the district court's order denying that motion.

¶ 2    In reaching this conclusion, we disagree with *People v. Baker*, 2017 COA 102, *rev'd on other grounds*, 2019 CO 97M, in which another division of this court held that the correction of an illegal sentence resets the statutory time bar for collaterally attacking the original judgment of conviction in all respects.

## I.  Background

¶ 3    In 2006, a jury found Hunsaker guilty of sexual assault on a child and sexual assault on a child as part of a pattern of abuse (pattern count).  The court sentenced him to concurrent prison terms of eight years to life for sexual assault on a child and sixteen years to life on the pattern count.  On appeal, a division of this court affirmed Hunsaker's convictions.  *People v. Hunsaker*, (Colo. App. No. 06CA2088, Mar. 4, 2010) (not published pursuant to C.A.R. 35(f)) (*Hunsaker I*).  The mandate issued on January 31, 2011.

¶ 4    In 2011, Hunsaker filed a Crim. P. 35(a) motion, arguing that the court had illegally imposed sentences applicable to extraordinary risk crimes despite the fact that neither of his convictions presented an extraordinary risk of harm.  The prosecution agreed that Hunsaker had not been convicted of an extraordinary risk crime and, accordingly, conceded that Hunsaker had received an illegal sentence for the count of sexual assault on a child.  With respect to the pattern count, however, the prosecution maintained that the sentence was legal because the pattern count was a crime of violence.  The district court agreed with Hunsaker

and amended the mittimus to reflect sentences of six years to life on the sexual assault on a child count and twelve years to life on the pattern count.

¶ 5     The People appealed the court's decision to resentence Hunsaker on the pattern count.  A division of this court agreed that the original sentence of sixteen years to life was legal and remanded the case for the district court to reinstate that sentence.  *People v. Hunsaker*, 2013 COA 5, ¶¶ 24, 45-46 (*Hunsaker II*), *aff'd*, 2015 CO 46, ¶ 40.  The mandate issued on August 6, 2015.  In February 2016, the district court amended the mittimus to reinstate the sentence of sixteen years to life on the pattern count.

¶ 6     On February 16, 2016, Hunsaker filed the Crim. P. 35(c) motion that is the subject of this appeal.  He argued that the district court violated his

- right to due process, by failing to follow the statutory requirements for determining his competency and allowing him to be tried and sentenced without determining whether he was competent;

- right to a jury trial, by imposing a sentence in 2006 that exceeded the maximum in the presumptive range on the

pattern count without a jury finding of aggravating circumstances; and

- right to be free of double jeopardy, by reinstating the sentence of sixteen years to life on the pattern count after he had completed the minimum term of the indeterminate sentence and had been released on parole because he had a legitimate expectation of finality once he had been released on parole.

¶ 7 Hunsaker also asserted that the four attorneys who represented him during the pretrial proceedings, trial, and sentencing provided ineffective assistance by

- failing to adequately prepare for trial;

- advising him to flee the jurisdiction;

- representing him while under a conflict of interest;

- failing to raise the issue of competency; and

- failing to object to the court's imposition of sentences that were modified for extraordinary risk crimes even though the crimes of which he was convicted did not constitute an extraordinary risk of harm.

¶ 8    After the People filed a response, Hunsaker filed a reply arguing that he did not receive reasonable notice that he was subject to a sentence with a minimum term that exceeded the maximum in the presumptive range without a finding of aggravated circumstances.

¶ 9    The district court denied Hunsaker's Crim. P. 35(c) motion without a hearing.

## II.    Abandoned Argument

¶ 10    Because he did not reassert it on appeal, Hunsaker has abandoned his double jeopardy argument.  *See People v. Osorio*, 170 P.3d 796, 801 (Colo. App. 2007).

## III.    Timeliness of Hunsaker's Crim. P. 35(c) Claims

¶ 11    As for the issues that Hunsaker has raised on appeal, he argues that the district court erred by denying his motion without a hearing because he alleged facts that, if true, would provide a basis for relief.  We conclude that all but one of Hunsaker's claims are untimely.

¶ 12    We review de novo a district court's denial of a Crim. P. 35(c) motion without a hearing.  *See People v. Phipps*, 2016 COA 190M, ¶ 20.  A court may deny the motion without a hearing if "the

motion, the files, and the record clearly establish that the defendant is not entitled to relief." *Osorio*, 170 P.3d at 799.

¶ 13    Generally, a defendant must file a Crim. P. 35(c) motion within three years after the date of his felony conviction. *See* § 16-5-402(1), C.R.S. 2019. Where, as here, there was a direct appeal, a conviction is final when the appellate process has been exhausted. *See People v. Hampton*, 857 P.2d 441, 444 (Colo. App. 1992), *aff'd*, 876 P.2d 1236 (Colo. 1994). The date of Hunsaker's conviction for purposes of section 16-5-402(1) was January 31, 2011 — the date the mandate issued in *Hunsaker I*. The statutory limitations period thus expired on January 31, 2014, but Hunsaker did not file his Crim. P. 35(c) motion until February 16, 2016.[1]

¶ 14    Nonetheless, citing *Leyva*, Hunsaker argues (as he did in the Crim. P. 35(c) motion) that the motion was timely filed because his convictions did not become final (and the three-year limitations period did not start) until the district court reinstated the sentence

---

[1] Although there is an exception to the three-year limitations period if a defendant shows that his "failure to seek relief within the applicable time period was the result of circumstances amounting to justifiable excuse or excusable neglect," § 16-5-402(2)(d), C.R.S. 2019, Hunsaker did not allege that there was justifiable excuse or excusable neglect for the late Crim. P. 35(c) arguments.

6

of sixteen years to life on the pattern count on February 29, 2016. He contends that the People's appeal of the sentence on the pattern count tolled the deadline for filing a Crim. P. 35(c) motion as to *any* issue involving his convictions or sentences.

¶ 15    In *Leyva*, the supreme court held that "when an illegal sentence is corrected pursuant to Crim. P. 35(a), it renews the three-year deadline for collaterally attacking the original judgment of conviction pursuant to Crim. P. 35(c)." *Leyva*, 184 P.3d at 50-51. Yet, despite the apparent breadth of this language, *Leyva* limited its holding by stating that the illegality allows a defendant "to pursue any good-faith arguments for postconviction relief *addressing how that illegality potentially affected his or her original conviction.*" *Id.* at 50 (emphasis added). We read this sentence as requiring some nexus between the original illegal sentence and the claims raised in a future Crim. P. 35(c) motion. Indeed, as the dissenting justices in *Leyva* noted, the majority tried "to limit the consequences of its rationale by suggesting that the defendant's right to collaterally attack his judgment of conviction remains restricted, even after today's holding, to matters sufficiently affected by or related to the illegality of his sentence." *Id.* at 51 (Coats, J., dissenting).

7

¶ 16 We conclude that *Leyva* limits the renewal of the three-year deadline for filing a Crim. P. 35(c) motion to claims that are related to how the illegality in the original sentence potentially affected a defendant's original conviction. Thus, the illegality in the original sentence on Hunsaker's conviction for sexual assault on a child did renew the three-year period for him to file a Crim. P. 35(c) motion on all claims — but instead only for claims that relate to how the illegality in that sentence may have affected his conviction.

¶ 17 Hunsaker's postconviction claims relate to the district court's actions in determining his competency and in imposing the original sentence on the pattern count (which was legal from the time that it was imposed); trial counsel's performance before and during the trial on matters unrelated to his sentences; and trial counsel's performance during sentencing related to the pattern count. Only the last of these claims — that defense counsel rendered ineffective assistance by failing to object to the imposition of an extraordinary risk sentence where the conviction did not present an extraordinary risk of harm — even arguably relates to the illegality in his original sentence for sexual assault on a child.

¶ 18    Therefore, with the exception of that argument, Hunsaker's limitations period expired on January 31, 2014, three years after the mandate issued in *Hunsaker I.* Any Crim. P. 35(c) claims that did not relate to how the illegality in Hunsaker's sentence may have affected his conviction were untimely, and the district court properly denied them without a hearing. *See Osorio,* 170 P.3d at 799; *see also People v. Aarness,* 150 P.3d 1271, 1277 (Colo. 2006) (an appellate court may affirm the district court on any ground supported by the record).

¶ 19    In reaching this conclusion, we necessarily disagree with the division in *Baker.* *See People v. Thomas,* 195 P.3d 1162, 1164 (Colo. App. 2008) (one division of this court is not bound by the decision of another division). In *Baker,* the division declined to read any limitation into *Leyva*'s holding, concluding that the supreme court (1) repeatedly phrased its holding broadly; and (2) remanded the case for "consideration of the defendant's ineffective assistance of counsel claims on all of the defendant's convictions, even though it determined the defendant's sentence was illegal on only one count." *Baker,* ¶¶ 40-41.

9

¶ 20    We are not persuaded that *Leyva*'s phrasing negated the limiting language used in the opinion.  Nor do we believe that the broad remand in that case requires a similar result here.  To the contrary, the scope of *Leyva*'s mandate was consistent with the opinion's limiting language because the defendant's Crim. P. 35(c) motion included an argument that "the late-discovered illegality in his sentence helps establish that he received ineffective assistance of counsel." *Leyva,* 184 P.3d at 50.

¶ 21    In our view, it makes sense to require some connection between the illegality that formed the basis of an illegal sentence and an otherwise belatedly raised claim.  Concluding that no such connection is necessary would run counter to the state's interest in the finality of convictions by allowing otherwise time-barred defendants to file repeated motions under Crim. P. 35(a) with the hope of discovering an illegality that reopens the Crim. P. 35(c) door.  But we discern no good reason to allow the period for filing *any and all* potential Crim. P. 35(c) claims to recommence simply because some component of a defendant's sentence was inconsistent with statutory authority, regardless of the extent of the illegality.  *See People v. Wenzinger,* 155 P.3d 415, 418 (Colo. App.

2006) ("[A] sentence is 'illegal' under Crim. P. 35(a) if it is 'inconsistent with the statutory scheme outlined by the legislature.'" (quoting *People v. Rockwell*, 125 P.3d 410, 414 (Colo. 2005))).

¶ 22    Here, unlike the defendant in *Leyva*, Hunsaker made no attempt in his postconviction motion to link the illegality of the sentence on the sexual assault on a child count to his collateral attack on the judgment of conviction.  That is, he did not argue that the illegality in his sentence had any bearing on the question whether his underlying conviction was constitutionally obtained.  Thus, *Baker*'s reliance on *Leyva*'s remand does not persuade us that the statutory limitations period should be reset for all of Hunsaker's claims.

IV.    Extraordinary Risk Crime Argument

¶ 23    Next, we will assume, without deciding, that the three-year limitations period was reset with respect to Hunsaker's claim that trial counsel was constitutionally ineffective for failing to object when the court modified the presumptive range for an extraordinary risk crime and that the claim was timely filed.  Even so, we conclude that the claim fails as a matter of law.

¶ 24    A court may deny an ineffective assistance of counsel claim, as a matter of law, if the defendant does not make sufficient allegations that, if true, would entitle him to relief.  *See People v. Wilson*, 397 P.3d 1090, 1097 (Colo. App. 2011), *aff'd on other grounds*, 2015 CO 37.

¶ 25    To prove an ineffective assistance of counsel claim, a defendant must show that his counsel's performance was deficient — that is, it fell below an objective standard of reasonableness — and that the deficient performance prejudiced the defense.  *See Dunlap v. People*, 173 P.3d 1054, 1062 (Colo. 2007).  "Because a defendant must show both deficient performance and prejudice, a court may resolve the claim solely on the basis that the defendant has failed in either regard."  *People v. Karpierz*, 165 P.3d 753, 759 (Colo. App. 2006).

¶ 26    The test for evaluating counsel's performance is whether counsel's conduct was "within the range of competence demanded of attorneys in criminal cases under prevailing professional norms."  *People v. Garcia*, 815 P.2d 937, 941 (Colo. 1991).  "To prove prejudice, a defendant must show a reasonable probability that, but for counsel's ineffective assistance, the result of the proceeding

would have been different." *Karpierz*, 165 P.3d at 759. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

¶ 27 In the Crim. P. 35(c) motion, Hunsaker alleged that trial counsel's performance was deficient for failing to object to the court's modification of the presumptive sentencing ranges for extraordinary risk crimes, even though the crimes for which he was convicted were no longer considered to be an extraordinary risk of harm after the legislature repealed the classification in 2004. He argued that counsel's deficient performance prejudiced his defense because, if counsel had brought the repeal to the court's attention, it would have resulted in the court imposing a sentence of twelve years to life.

¶ 28 Although Hunsaker did not specify this, a sentence of twelve years to life would have been applicable only to the pattern count. Therefore, we limit our analysis of how the illegality in the sentence on the sexual assault on a child count could have affected the sentence on the pattern count.

¶ 29 We agree that the allegation that trial counsel's failure to object to the court's modification of the sentencing range for an

extraordinary risk crime when the crime of sexual assault on a child was not an extraordinary risk crime, if true, would have constituted deficient performance. However, Hunsaker has not shown how the outcome of the sentencing hearing would have been different with regard to the sentence on the pattern count, because the fact that the presumptive sentencing range on the sexual assault on a child count should have been different has no bearing on the presumptive sentencing range on the pattern count. Hunsaker's claim regarding the presumptive range on the pattern count is time barred because the original sentence on that count was legal. The limitations period has not been reset with regard to that claim.

¶ 30     Under these facts, we conclude that the court also properly denied this claim without a hearing. *See Osorio*, 170 P.3d at 799; *see also Aarness*, 150 P.3d at 1277.

## V.     Conclusion

¶ 31     The order is affirmed.

JUDGE GRAHAM concurs.

JUDGE RICHMAN concurs in part and dissents in part.

14

JUDGE RICHMAN, concurring in part and dissenting in part.

¶ 32    I agree with the majority's comment that for purposes of enforcing a time limitation on postconviction motions, it makes sense to require some connection between the illegality that formed the basis of a successful illegal sentence claim and a later-filed claim under Crim. P. 35(c).  Otherwise, the goal of finality embodied in section 16-5-402(1), C.R.S. 2019, is undermined.

¶ 33    However, I cannot state with certainty that the language of *Leyva v. People*, 184 P.3d 48, 50-51 (Colo. 2008), requires that connection, and thus I must express my disagreement with the majority.  At least three times in the *Leyva* opinion, the majority states its holding without requiring a connection between the illegal sentence and the scope of the Crim. P. 35(c) motion.

> [T]he three-year deadline for bringing a Crim. P. 35(c) motion regarding the original conviction was not triggered until Leyva's sentence was corrected, and his judgment of conviction amended.

184 P.3d at 49.

> [T]he only question is whether Leyva's collateral attack on his 1993 conviction, brought within three years of his resentencing, was properly brought within three years "of

15

said conviction," as that term is used in section 16-5-402(1).

*Id.* at 49-50.

> We conclude that when an illegal sentence is corrected pursuant to Crim. P. 35(a), it renews the three-year deadline for collaterally attacking the original judgment of conviction pursuant to Crim. P. 35(c).

*Id.* at 50-51.

¶ 34    While the opinion also states that "[i]f an illegality is discovered in a prisoner's sentence, the prisoner should be allowed to pursue any good-faith arguments for postconviction relief addressing how that illegality potentially affected his or her original conviction," *id.* at 50, that sentence, until further clarified by the supreme court, does not appear to be the holding of the case. *See People v. Baker*, 2017 COA 102, ¶ 40, *rev'd on other grounds*, 2019 CO 97M.[1]

---

[1] The supreme court granted certiorari in *Baker* on this very issue. *People v. Baker,* No. 17SC570, 2017 WL 5477160 (Colo. Nov. 13, 2017) (unpublished order) ("Whether the correction of a sentence not authorized by law renews the three-year deadline for collaterally attacking the original judgment of conviction in all respects."). However, it then decided the case on different grounds. Perhaps it will grant certiorari in this case and clarify the issue.

¶ 35 Thus, I must disagree with the majority's reliance on that sentence. I must further disagree that all of Hunsaker's claims, other than the one regarding trial counsel's failure to object to the district court's modification of the sentencing range for an extraordinary risk crime, are barred by the time limitation.

¶ 36 Nonetheless, I concur with the majority that the district court properly denied the claim regarding trial counsel's failure to object to the court's modification of the sentencing range for an extraordinary risk crime, for the reasons stated by the majority.

¶ 37 I would also conclude that Hunsaker's claim that the district court denied his right to due process by failing to follow the statutory requirements for determining his competency, and by allowing him to be tried and sentenced without a competency determination, was an issue that could have been presented in a previous appeal. It was therefore successive and barred under Crim. P. 35(c)(3)(VII). Accordingly, I would affirm the district court's order as to this claim.

¶ 38 Finally, because I conclude that Hunsaker's ineffective assistance of counsel claims were timely brought, I would remand this case for a hearing on his claims that counsel was ineffective for

17

(1) failing to adequately prepare for trial; (2) advising him to flee the jurisdiction; and (3) failing to raise the issue of competency.  I do not find the district court's reasons for denying these claims to be persuasive for several reasons.

¶ 39    First, the district court's order does not appear to address the claim that counsel was inadequately prepared for trial.

¶ 40    Second, the order concludes that the allegation that counsel advised Hunsaker to flee the jurisdiction is "very difficult to believe." That may be so, but a defendant is entitled to a hearing so long as he has asserted facts in his postconviction motion that, *if true*, would provide a basis for relief under Crim. P. 35.  *People v. Morones-Quinonez*, 2015 COA 161, ¶ 6 (citing *White v. Denver Dist. Court*, 766 P.2d 632, 635 (Colo. 1988)).  The district court did not apply that standard.

¶ 41    Third, the order rejected the claim that counsel improperly failed to raise the issue of competency by simply stating, "counsel properly raised and resolved that issue."  While the record reflects that counsel stated that Hunsaker's mental health issues, which were previously raised, had "been resolved with regard to his lawyers," that statement does not clarify that these issues were

18

withdrawn after consultation with Hunsaker and with his consent. On remand, I would order the district court to examine the circumstances that led to counsel's statement and determine whether it was authorized by Hunsaker.

¶ 42    To the extent that the district court denied Hunsaker's other postconviction claims, I would affirm those rulings.