22CA1731 Peo v Hatfield 04-10-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA1731
El Paso County District Court No. 14CR1732
Honorable David Shakes, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Justin Jay Hatfield,

Defendant-Appellant.

ORDER REVERSED AND CASE REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE GROVE
Harris and Pawar, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 10, 2025

Philip J. Weiser, Attorney General, William G. Kozeliski, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

R. Scott Reisch, Alternate Defense Counsel, Robert F. LeVeen, Alternate
Defense Counsel, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Justin Jay Hatfield, appeals the district court's order denying his "Petition for Postconviction Relief Pursuant to Crim. P. 35(c)" without a hearing.  We reverse and remand the case for further proceedings.

## I.    Background

¶ 2    In 2014, a jury convicted Hatfield of sexual assault and unlawful sexual contact.  The district court sentenced him to a controlling term of six years to life in prison.  A division of this court affirmed Hatfield's conviction on direct appeal.  *People v. Hatfield*, (Colo. App. No. 15CA1802, Mar. 1, 2018) (not published pursuant to C.A.R. 35(f)) (*Hatfield I*).  The mandate issued on August 21, 2018.

¶ 3    Three months later, Hatfield filed a "Motion for Sentence Reconsideration" in which he asked the district court to (1) reconsider his sentence and (2) vacate the crimes against a child surcharge.  While the court commended Hatfield's rehabilitation efforts, it nevertheless found that the sentence imposed remained appropriate.  However, because the court found that the surcharge had been imposed by "mistake" — Hatfield's victim was an adult,

not a child — the court vacated the surcharge and on December 3, 2018, issued a revised mittimus reflecting the correction.

¶ 4    In November 2021, Hatfield filed a pro se Crim. P. 35(c) motion asserting various claims of ineffective assistance of trial counsel. None of the claims related to the court's correction of the surcharge.

¶ 5    Counsel was appointed and moved for a determination concerning the timeliness of Hatfield's motion.  Counsel informed the district court of the then-recent decision in *Hunsaker v. People*, 2021 CO 83 (*Hunsaker II*), and explained that Hatfield had relied on *Leyva v. People*, 184 P.3d 48 (Colo. 2008), which was the "state of the law" when he filed his motion, but if the court disagreed that his motion was timely, the "change in the law . . . provided justifiable excuse or excusable neglect for the late filing."  The court set the matter for a hearing.

¶ 6    At the hearing, Hatfield testified that it was his understanding that he "had three years from the date of [his] mittimus" to file a Crim. P. 35(c) motion and that he used December 3, 2018, as the date to calculate the filing of his motion because that was the date on the revised mittimus.  Additionally, although he could not recall any names, Hatfield testified that the "people at the law library told

[him that he] had three years from that date." The prosecution did not present any evidence.

¶ 7 Based on the evidence presented, the district court found that Hatfield's reliance on *Leyva* was "not at all . . . rational" because his "Motion for Sentence Reconsideration" was "not a motion to correct an illegal sentence under Crim. P. 35(a)" that would have "extend[ed] the time" to file his Crim. P. 35(c) motion. And no one "would interpret *Leyva* to mean that changing a surcharge on a [Crim. P.] 35(b) motion was intended to start, again, a three-year period on a . . . [Crim. P.] 35(c) . . . motion."

¶ 8 The district court also found that Hatfield's purported reliance on what the individuals in the law library told him concerning the deadline was not credible. The court based its credibility finding on Hatfield's "incredible and unbelievable" trial testimony and the fact that he could not recall any of the names of these individuals at the law library.

¶ 9 Finally, addressing the factors in *People v. Wiedemer*, 852 P.2d 424, 441-42 (Colo. 1993), the district court found that there were no outside influences that prevented Hatfield from seeking postconviction relief in a timely fashion and the need to challenge

the conviction was present "from day one." Thus, the court concluded that the motion was untimely and that Hatfield had not alleged sufficient justifiable excuse or excusable neglect to avoid its untimeliness.

## II. Discussion

¶ 10 Hatfield contends that the district court erred by denying his motion as untimely. In the alternative, he contends that he demonstrated justifiable excuse or excusable neglect for failing to collaterally attack the validity of his felony conviction within the applicable three-year limitations period. Because we agree with Hatfield's second contention, we reverse the court's order and remand the case for the district court to proceed as directed by Crim. P. 35(c)(V). *See People v. Chalchi-Sevilla*, 2019 COA 75, ¶ 23 (concluding that where appellate courts find an error in a district court's denial of a postconviction motion the appropriate procedure is to remand with directions "to put the train back on the tracks at the point it derailed").

### A. Standard of Review

¶ 11 We review de novo both the decision to deny a Crim. P. 35(c) motion without an evidentiary hearing and whether the facts alleged

4

in a Crim. P. 35(c) motion, if true, would constitute justifiable excuse or excusable neglect pursuant to section 16-5-402(2)(d), C.R.S. 2024. *People v. Cali*, 2020 CO 20, ¶ 14; *People v. Hinojos*, 2019 CO 60, ¶ 12. However, where, as here, a defendant receives a hearing on the timeliness of his motion and is challenging the district court's determination that the statutory exception does not apply, we must affirm if the record supports the court's findings. *See People v. Smith*, 2024 CO 3, ¶ 16 ("In Crim. P. 35(c) proceedings, we review the postconviction court's legal conclusions de novo but defer to its factual findings if they are supported by the record."); *see also People v. Vigil*, 983 P.2d 805, 810 (Colo. App. 1999) (noting that deference is to be given to the district court's findings of fact following a hearing concerning justifiable excuse or excusable neglect).

### B.     Timeliness of the Motion

¶ 12     Hatfield's motion was untimely because it was not filed within three years of August 21, 2018, the date of the mandate from Hatfield's direct appeal, and his postconviction claims did not relate to the illegality in the sentence that the court corrected in the revised mittimus. *See Hunsaker II*, ¶¶ 35-37. Accordingly, his

request for postconviction relief "cannot proceed unless an exception under section 16-5-402(2) applies." *Id.* at ¶ 36. We turn to that question next.

## C. Justifiable Excuse or Excusable Neglect

¶ 13 A defendant's untimely submission of a Crim. P. 35(c) motion may be excused if his "failure to seek relief within the applicable time period was the result of circumstances amounting to justifiable excuse or excusable neglect." § 16-5-402(2)(d).

¶ 14 Hatfield contends, as he did at the hearing, that the "uncertainty in the law" at the time he filed his Crim. P. 35(c) motion, and his "detrimental reliance on the holding of *Leyva*" provides justifiable excuse or excusable neglect for his belated filing. Under these circumstances, we agree.

¶ 15 Before *Hunsaker II,* divisions of our court disagreed as to whether every successful Crim. P. 35(a) motion reset the three-year time limit or if the underlying claims of an otherwise untimely Crim. P. 35(c) motion had to relate to the illegality found in the earlier Crim. P. 35(a) motion. *Compare People v. Baker,* 2017 COA 102, *rev'd,* 2019 CO 97M, *with People v. Hunsaker,* 2020 COA 48, *aff'd,* 2021 CO 83 (*Hunsaker I*). The confusion stemmed from *Leyva,*

which espoused both broad and narrow interpretations of Crim. P. 35(a)'s effect on an untimely Crim. P. 35(c) motion. *See Hunsaker II*, ¶ 24. In *Hunsaker II*, the supreme court resolved the issue, holding that "[a] defendant who successfully corrects an illegal sentence may thereafter collaterally attack their conviction, but [if the time bar has otherwise expired and no exceptions apply,] they may only raise arguments addressing how the illegality in the sentence potentially affected the original conviction." *Id.* at ¶ 26.

¶ 16 Accordingly, *Hunsaker II* closed the door on Hatfield's argument that the revision of his mittimus reset the clock under section 16-5-402. But at the same time, it opened a window that may, under some circumstances, allow a defendant to establish justifiable excuse or excusable neglect for an untimely filing. *See Hunsaker II*, ¶ 41 (concluding that Hunsaker should be permitted to argue justifiable excuse or excusable neglect on remand because he "seems likely to have relied on the language in *Leyva* that we have now disavowed in delaying the filing of his Crim. P. 35(c) motion").

¶ 17 In *Wiedemer*, the supreme court identified six non-exclusive factors that may bear on the justifiable excuse or excusable neglect inquiry. 852 P.2d at 441-42. Applying some, but not all, of the

*Wiedemer* factors, the district court here found that Hatfield had failed to establish justifiable excuse or excusable neglect because no circumstances outside of Hatfield's control prevented him from filing his Crim. P. 35(c) motion earlier and Hatfield had a present need to challenge his conviction "from day one." The court also found that, despite the delay in filing Hatfield's motion, there was no "proof of prejudice" to the prosecution's ability to defend against his challenge, and that Hatfield's purported reliance on what the individuals in the law library told him concerning the deadline was not credible.

¶ 18    We respectfully disagree with the district court's finding that there were "no outside influences that prevented [Hatfield] from making a timely challenge to the conviction." True, as the court observed, there was no evidence of "an administrative hold, illness, no access to a library." But there was evidence of another outside influence: *Leyva*, as interpreted by the *Baker* division. Hatfield testified that it was his understanding that he "had three years from the date of [his] mittimus" to file a Crim. P. 35(c) motion. And, consistent with his reading of *Leyva* — which was itself supported by *Baker* — he used December 3, 2018, as the date to calculate the

8

filing of his motion because that was the date that "the Court corrected an error."[1]  Because Hatfield's reasonable reliance on *Leyva* caused him to miss the statutory deadline, the court's finding that there were "no outside influences" lacks record support.  And where a court's finding lacks record support, we will not defer to it. *Vigil*, 983 P.2d at 810.

¶ 19     The district court also found that Hatfield's need to challenge his conviction was present "from day one."  That may be true, but it does not shed any light on the statutory deadline, which Hatfield reasonably concluded was reset when the district court issued the revised mittimus.

---

[1] Contrary to the district court's conclusion that Hatfield's "Motion for Sentence Reconsideration" was "not a motion to correct an illegal sentence under Crim. P. 35(a)" — and thus did not implicate the holding in *Leyva v. People*, 184 P.3d 48 (Colo. 2008), at all — we conclude that Hatfield's motion did assert that his sentence was illegal because it included a child victim surcharge that was not authorized by statute for his conviction.  *See People v. Wenzinger*, 155 P.3d 415, 418 (Colo. App. 2006) ("[A] sentence is 'illegal' under Crim. P. 35(a) if it is 'inconsistent with the statutory scheme outlined by the legislature.'" (quoting *People v. Rockwell*, 125 P.3d 410, 414 (Colo. 2005))).  "The substance of a postconviction motion controls whether it is designated as a Crim. P. 35(a) or 35(c) motion."  *People v. Collier*, 151 P.3d 668, 670 (Colo. App. 2006).

¶ 20   The final factor considered by the district court was the amount of time that had passed since Hatfield's conviction and the effect of the passage of time on the prosecution's ability to defend against his challenge to it.  The mandate following *Hatfield I* issued in August 2018.  Hatfield's Crim. P. 35(c) motion was filed — three years and three months later — in November 2021.  Given a delay of just three months past the statutory deadline, the court found that there was no prejudice to the prosecution's ability to defend against Hatfield's challenge.  The court's finding has record support and we will not disturb it.

¶ 21   For these reasons, we conclude that Hatfield's delay in filing his Crim. P. 35(c) motion was excused by his reliance on *Leyva* and *Baker*.  Therefore, we do not address the district court's findings concerning Hatfield's testimony about what the individuals at the law library told him.  Because the record adequately supports Hatfield's assertion that he relied on his own, at the time reasonable, interpretation of the time bar established by section 16-5-402, he is justifiably excused on this basis alone.

¶ 22   We are not persuaded otherwise by the People's assertion that Hatfield's position lacks "factual support in the record" because he

never specifically testified that he relied on *Leyva* or any other prior decision to calculate the date his Crim. P. 35(c) motion was due. We acknowledge that Hatfield never identified *Leyva* as the basis for his calculations. But his testimony explaining how he determined the statutory deadline tracked the case precisely.

¶ 23 Nor are we persuaded that Hatfield's concession to the uncertainty of the law "dooms his argument." As discussed, the law at the time was indeed uncertain and it may well have been prudent for Hatfield to have submitted his pro se Crim. P. 35(c) motion under the more conservative interpretation of *Leyva*. But given the unsettled nature of the *Leyva* holding, Hatfield's failure to file his Crim. P. 35(c) motion earlier is not so unreasonable as to be unjustifiable. And when analyzing if the time bar should be strictly enforced or if the motion's tardiness should be excused, we must "give effect to the overriding concern . . . that a defendant have the meaningful opportunity required by due process to challenge his conviction." *Wiedemer*, 852 P.2d at 441.

¶ 24 Accordingly, we conclude that the district court erred when it found that Hatfield had failed to demonstrate justifiable excuse or excusable neglect for his untimely motion. While Hatfield's Crim. P.

11

35(c) motion was untimely, its untimeliness was justifiably excused based on Hatfield's reliance on his own, at the time reasonable, interpretation of *Leyva*.

### III.    Disposition

¶ 25    The order is reversed.  The case is remanded for the district court to continue the appointment of defense counsel, allowing counsel the opportunity to investigate and supplement, as needed, Hatfield's pro se motion with any claims counsel finds to have arguable merit.  The district court should then proceed as directed by Crim. P. 35(c)(V).

JUDGE HARRIS and JUDGE PAWAR concur.