Joshua **LEYVA**, Petitioner

v.

The **PEOPLE** of the State of **Colorado**, Respondent.

No. 07SC60.

Supreme Court of Colorado, En Banc.

May 12, 2008.

Rehearing Denied June 2, 2008.*

---

The Joffe Law Firm, Antony M. Noble, Denver, Colorado, Attorney for Petitioner.

John W. Suthers, Colorado State Attorney General, Majid Yazdi, Assistant Attorney

---

* Justice Coats and Justice Eid would grant the Petition.

General, Denver, Colorado, Attorneys for Respondent.

Justice RICE delivered the Opinion of the Court.

In this appeal we review the unpublished opinion of the court of appeals in *People v. Leyva*, No. 05CA0792, 2006 WL 3803942 (Colo.App. Dec.28, 2006), to determine whether the entry of an amended judgment of conviction, correcting a prisoner's sentence on one count, renewed the three-year deadline for bringing a collateral attack pursuant to Crim. P. 35(c) regarding the original judgment of conviction.

We hold that because Defendant Joshua Leyva's original judgment of conviction contained an illegal sentence on one count, the entire sentence was illegal. The sentence was therefore subject to correction and the judgment of conviction was subject to amendment, such that the judgment of conviction was not final or fully valid. Accordingly, the three-year deadline for bringing a Crim. P. 35(c) motion regarding the original conviction was not triggered until Leyva's sentence was corrected, and his judgment of conviction amended. We therefore reverse the court of appeals' decision and remand for further proceedings consistent with this opinion.

## I.  Facts and Procedural History

On March 15, 1993, Leyva pled guilty to charges of first-degree assault, first-degree burglary, and attempted first-degree sexual assault stemming from an incident at his sister-in-law's home. On April 21, 1993, the trial court sentenced him to eighteen years for the count of first-degree assault, eight years for the first-degree burglary count, and eighteen years for the attempted first-degree sexual assault count, all to be served concurrently. The trial court then entered a judgment of conviction regarding Leyva's plea and sentence on all counts. Leyva did not appeal the judgment.

On December 29, 1999, Leyva filed a motion to correct an illegal sentence pursuant to Crim. P. 35(a), arguing that his eighteen-year sentence for attempted first-degree sexual assault exceeded the maximum allowable sentence. The trial court ultimately granted Leyva's motion on November 28, 2001, and amended Leyva's judgment of conviction to reflect a corrected sentence of only sixteen years for the attempted first-degree sexual assault count. The sentences on the remaining counts were unchanged.

On November 24, 2004, Leyva filed a motion pursuant to Crim. P. 35(c) to set aside his 1993 guilty plea, alleging ineffective assistance of counsel in entering his plea. Specifically, Leyva alleged that his counsel failed to investigate the proper maximum sentence for the attempted first-degree sexual assault count and failed to properly advise him as to the proper sentencing range for all the counts with which he was charged. Citing section 16-5-402(1), C.R.S. (2007), the trial court ruled that Leyva's motion was time-barred because it was not filed within three years of the original date of conviction, and that the amended judgment of conviction did not renew that deadline. Leyva appealed to the court of appeals, which adopted the trial court's reasoning and affirmed its order.

## II.  Analysis

This court granted certiorari to review whether the entry of an amended judgment of conviction, correcting Leyva's sentence on one count, renewed the three-year deadline for bringing a collateral attack pursuant to Crim. P. 35(c) regarding Leyva's original conviction.

Section 16-5-402(1), C.R.S. (2007), requires that a collateral attack of a non-class-one felony conviction or adjudication shall be commenced within three years "following the date of said conviction."[1] Leyva's Crim. P. 35(c) motion was filed more than three years after his original 1993 sentencing, but less than three years after his 2001 sentence correction. Thus, the only question is whether Leyva's collateral attack on his 1993 conviction, brought within three years of his resentencing, was properly brought within three

---

1. The parties agree that Leyva's motion to set aside his 1993 guilty plea pursuant to Crim. P. 35(c) is a collateral attack on his conviction. *Cf.*

*People v. Wiedemer*, 852 P.2d 424, 430–31 (Colo. 1993).

years "of said conviction," as that term is used in section 16–5–402(1).

We review de novo questions of statutory interpretation. *West v. Roberts*, 143 P.3d 1037, 1040 (Colo.2006). In interpreting the language of section 16–5–402(1), our primary task is to give effect to the intent of the legislature. *People v. Hampton*, 876 P.2d 1236, 1239 (Colo.1994). We start with the plain language of the statute. *Id.*

We have previously considered the meaning of the term "conviction" in section 16–5–402(1), concluding that it "refers to a conviction after a defendant's appeal has been exhausted." *Id.* at 1240. We reached that conclusion because generally, "a conviction is not final and has no legal force until after appeals have been exhausted." *Id.* at 1239. That holding illustrates that the term "conviction" as it is used in section 16–5–402(1) does not simply refer to the initial entry of a judgment of conviction. Rather, the term "conviction" must refer to a valid, final determination of guilt and sentencing.

We therefore look to whether Leyva's 1993 judgment of conviction was a valid, final determination. The trial court found that the 1993 judgment included an illegal sentence with respect to the attempted first-degree sexual assault count. This rendered illegal the entire sentence, on all counts, contained in the judgment. *Delgado v. People*, 105 P.3d 634, 637 (Colo.2005) ("[I]t has long been clear that a sentence is illegal unless all the components of a sentence fully comply with the sentencing statutes."). Because the judgment contained an illegal sentence, the sentence was subject to correction pursuant to Crim. P. 35(a), which in turn meant that the judgment of conviction was subject to amendment. Thus, until the sentence was corrected and the judgment amended, the 1993 judgment of conviction was neither fully valid nor final—in other words, it was no more valid or final than a judgment that is still subject to appeal. For the same reasons that a judgment subject to appeal is not yet a

"conviction" pursuant to section 16–5–402(1), *see Hampton*, 876 P.2d at 1239, a judgment containing an illegal sentence is also not yet a "conviction" as that term is used in that section.[2]

This construction of the term "conviction" in section 16–5–402(1) comports with the plain language of the statute, *see Hampton*, 876 P.2d at 1239, and also serves to harmonize the procedures applicable to Crim. P. 35(b) and 35(c). *See Delgado*, 105 P.3d at 638 (holding that correction of illegal sentence renews 120–day deadline for filing motion to reduce sentence pursuant to Crim. P. 35(b)); *Hampton*, 876 P.2d at 1240 (harmonizing procedures applicable to Crim. P. 35(b) and 35(c) deadlines when appeal is pending). Furthermore, our construction gives effect to the legislature's prescription that, "[n]otwithstanding the fact that no review of a conviction of crime was sought by appeal within the time prescribed therefor, or that a judgment of conviction was affirmed upon appeal, every person convicted of a crime is entitled as a matter of right to make applications for post-conviction review." § 18–1–410(1), C.R.S. (2007); *see Hampton*, 876 P.2d at 1240–41 (seeking to harmonize procedures applicable to Crim. P. 35(c) and prescription of section 18–1–410(1)). If an illegality is discovered in a prisoner's sentence, the prisoner should be allowed to pursue any good-faith arguments for postconviction relief addressing how that illegality potentially affected his or her original conviction. In the case at hand, for instance, Leyva argues that the late-discovered illegality in his sentence helps establish that he received ineffective assistance of counsel in entering his guilty plea. We express no opinion on the merits of Leyva's arguments in that regard, but hold that section 16–5–402(1) cannot be read to deny him the ability to have that motion adjudicated.

### III.  Conclusion

We conclude that when an illegal sentence is corrected pursuant to Crim. P. 35(a), it

---

2. In this opinion, we only construe the term "conviction" as it is used in section 16–5–402(1). Our construction has no effect on matters such as the jurisdiction of appellate courts or the time limits for filing appeals, as those matters are controlled by different rules and statutes employ-ing different standards. *See, e.g.,* § 16–12–102, C.R.S. (2007) (defining "final order" that is subject to appeal); C.A.R. 1 (defining appealable matters); C.A.R. 4 (prescribing time limits for filing appeals).

renews the three-year deadline for collaterally attacking the original judgment of conviction pursuant to Crim. P. 35(c). We therefore reverse the court of appeals' decision and remand for further proceedings consistent with this opinion.

Justice COATS dissents, and Justice EID joins in the dissent.

Justice COATS, dissenting.

Because I believe the majority confounds the question of jurisdiction to impose sentence with the legality of the sentence actually imposed, and because I fear the implications of its rationale extend far beyond the limitation on collateral attacks at issue here, I respectfully dissent.

In essence, the majority's opinion extends the court's rationale in *Delgado v. People*, 105 P.3d 634 (Colo.2005), beyond the context of discretionary sentence reduction, *see* Crim. P. 35(b), and applies it as well to a "conviction," for purposes of limiting collateral attacks, *see* § 16-5-402, C.R.S. (2007). In *Delgado*, this court interpreted Crim. P. 35(b)'s 120-day limitation on a sentencing court's authority to discretionarily reduce a criminal sentence to be triggered only by "a legally imposed criminal sentence," meaning that the 120-day limitation does not begin to run from the imposition of a sentence later found to be illegal. Although I criticized the court's imputation of this additional requirement of legality at that time, *see Delgado*, 105 P.3d at 638-39 (Coats, J., dissenting), the holding in *Delgado* was at least limited to an interpretation of this court's own rule defining the point at which a sentence becomes final and the discretion to reduce it therefore passes from the judicial to the executive branch of government. *See id.* at 638; *see also People v. Herrera*, 183 Colo. 155, 161-62, 516 P.2d 626, 628-29 (1973).

While the argument advanced by the majority today is not entirely clear to me, the majority does clearly conclude that a "conviction" must include the defendant's sentence as one of its component parts, and therefore it cannot be a valid and final "determination of guilt and sentencing," or a valid and final "conviction," unless that sentence is also legal. By the majority's reasoning, if a defendant ultimately succeeds in demonstrating that his sentence is illegal, his guilty verdict and initial sentence never amounted to a "conviction," and therefore failed to set in motion any time limitation on his right to collaterally attack his conviction. By understanding the term "conviction" to include only guilty pleas, or other guilty verdicts, for which a valid and final sentence is imposed, the majority not only ignores the clear purpose of section 16-5-402, but also draws into question the validity of virtually every judicial act contingent only upon a final judgment of conviction.

The majority tries to limit the consequences of its rationale by suggesting that the defendant's right to collaterally attack his judgment of conviction remains restricted, even after today's holding, to matters sufficiently affected by or related to the illegality of his sentence. *See* maj. op. at 50. If, however, the statute of limitations on collateral attacks does not begin to run until sometime after the entry of a valid sentence, as the majority holds, it would seem clear that no collateral attack on a defendant's conviction, regardless of its nature, could be sooner time-barred. The majority's interpretation therefore simply flies in the face of the expressed intent of the statute by permitting defendants to litigate extremely stale claims, for reasons other than those falling within the statute's expressly enumerated exceptions.

Similarly, without any explanation how it could be the case, the majority purports to restrict its rationale concerning convictions solely to the statute of limitations on collateral attacks. *See* maj. op. at 50 n. 2. Unless a "conviction" in that context refers to a "judgment of conviction," as defined for criminal procedure purposes at Crim. P. 32(b)(3), it is difficult to understand why a "conviction" necessarily includes a sentence at all. In any event, if the reference to "sentence" in Crim. P. 35(b) implies only a legally imposed sentence, and that same implication applies to a "conviction" for purposes of the statute of limitations on collateral attacks, it is far from clear why it should not apply equally to the

"sentence" component of a judgment of conviction generally.

If the same reasoning applies, even the period for filing a notice of appeal can begin to run only upon the imposition of a valid sentence. And if the illegality of a sentence initially imposed prevents the defendant's entire judgment of conviction from becoming final, any appellate court reviewing such an un-final conviction presumably lacks jurisdiction to do so, rendering its resolution of the defendant's initial assignments of error a nullity, permitting their relitigation by a court with jurisdiction.

There is of course nothing in the term "conviction" to suggest that it was not intended to apply equally to all guilty verdicts upon which a sentence is imposed, whether that sentence turns out to be legal or not. Quite the contrary, when the term "conviction" is used in reference to a review of its validity, it seems painfully obvious that the detection of existing error is the object of the review, and therefore the finality of a conviction cannot be conditioned on its validity, or legality. Whether intended by the majority or not, its sweeping pronouncement—that despite containing all of the components required by Crim. P. 32(b)(3), what otherwise appears to be a judgment of conviction is not a "conviction" at all unless or until it includes a "valid" sentence—has the necessary effect of retroactively depriving any higher court of jurisdiction to review an illegal sentence or, for that matter, a judgment of conviction containing an illegal sentence.

The majority's rationale seems to me to be not only circular and problematic, but wholly unnecessary as well. Should the correction of an illegal sentence actually make apparent or meaningful a ground for relief, only sometime after the three-year limitation period of the statute has run, its "good cause" provision provides an adequate and appropriate basis for nevertheless permitting further challenge. Because that would not appear to be the case where, as here, the defendant must be aware, at least by the time he challenges his sentence as illegal, that his prior counsel has failed to object to an illegal sentence, I respectfully dissent.

I am authorized to state that Justice EID joins in this dissent.