2021 CO 83 William J. Hunsaker, Jr., Petitioner v. The People of the State of Colorado, Respondent No. 20SC360
Supreme Court of Colorado, En Banc
December 20, 2021

 Certiorari to the Colorado Court of Appeals Court of Appeals
Case No. 17CA1815

 Attorneys for Petitioner: Hunsaker Emmi, P.C. William J.
 Hunsaker Arvada, Colorado

 Attorneys for Respondent: Philip J. Weiser, Attorney General
Megan C. Rasband, Assistant Attorney General Denver, Colorado

 OPINION

 HART,
 JUSTICE

 ¶1
 After criminal defendants are convicted, Colorado Rule of
 Criminal Procedure 35 provides them with three types of
 postconviction remedies. A defendant may seek correction of
 an illegal sentence "at any time"-even many years
 after the conviction. Crim. P. 35(a). A defendant may ask the
 court to reduce a sentence within certain limited timeframes.
Crim. P. 35(b). And a defendant may bring other specified
 types of postconviction challenges to a conviction or
 sentence but must generally do so within three years of the
 date of conviction. See Crim. P. 35(c); §
 16-5-402(1), C.R.S. (2021). The question we are asked to
 answer here is how Crim P. 35(a), which permits the
 correction of a sentence "at any time," should
 interact with Crim. P. 35(c), which has a three-year statute
 of limitations subject to only a few specific exceptions
 provided in section 16-5-402(1).

 ¶2
We have considered this question once before, in Leyva v.
 People, 184 P.3d 48 (Colo. 2008), but that opinion has
 been construed by two different divisions of the court of
 appeals in mutually exclusive ways. One division has found
 that, under Leyva, correction of an illegal sentence
 renews the limitations period for all arguments for
 postconviction relief, entirely restarting the three-year
 clock. See People v. Baker, 2017 COA 102,
 ¶¶ 37-42, 461 P.3d 534, 540, rev'd on other
 grounds, 2019 CO 97M, 452 P.3d 759. In contrast, the
 division in this case found that, under Leyva,
 correction of an illegal sentence only renews the Crim P.
 35(c) limitations period for arguments "related to how
 the illegality in the original sentence

 potentially affected a defendant's original
 conviction." People v. Hunsaker, 2020 COA 48,
 ¶ 16, 490 P.3d 688, 692. We must now determine which of
 these two competing interpretations is correct.

 ¶3
We reaffirm our conclusion in Leyva that, where a
 court corrects an illegal sentence, the defendant may
 thereafter pursue an otherwise time-barred Crim. P. 35(c)
 motion. However, the corrected sentence only allows
 defendants to raise arguments addressing how the illegality
 in their sentence potentially affected the original
 conviction. In reaching this conclusion, we reaffirm our
 holding in People v. Hampton, 876 P.2d 1236, 1240
(Colo. 1994)-"the meaning of the word
 'conviction' in section 16-5-402(1) refers to a
 conviction after a defendant's appeal has been
 exhausted"-and we disavow Leyva's contrary
 suggestion that a "conviction" does not occur until
 a sentence is correct.

 ¶4
 In this case, defendant William Hunsaker, Jr., missed the
 deadline for filing his Crim. P. 35(c) motion. However, his
 original sentence was illegal, and the district court
 corrected it. His late filing of a collateral attack related
 to the illegality in his sentence is thus justifiably
 excused. We affirm the court of appeals' conclusion that
 one of Hunsaker's Crim. P. 35(c) arguments is related to
 the illegality in his sentence and remand for further
 proceedings consistent with this opinion.

 I.
Facts and Procedural History

 ¶5
William Hunsaker, Jr., has spent the last fifteen years
 challenging his convictions for two criminal offenses. In
 June 2006, a jury found him guilty of sexual assault on a
 child ("count I") and sexual assault on a child as
 a pattern of abuse ("count II"). The trial court
 found that these were "extraordinary risk" crimes,
 subject to an enhanced sentence for that reason, and
 sentenced Hunsaker to eight years to life for count I and
 sixteen years to life for count II, to run concurrently.
Hunsaker appealed, and his convictions were affirmed. On
 January 31, 2011, the mandate issued.

 ¶6
 Two months later, Hunsaker filed a Crim. P. 35(a) motion,
 arguing that his sentence was illegal as to both counts
 because neither was an extraordinary risk crime. The
 prosecution agreed that neither count constituted an
 extraordinary risk crime but maintained that the count II
 sentence to sixteen years was nonetheless lawful because that
 count charged a per se crime of violence. The district court
 concluded that both sentences were illegal and, in June 2011,
 amended the mittimus to reflect Hunsaker's sentence of
 six years to life for count I and twelve years to life for
 count II.

 ¶7
The prosecution appealed the court's finding as to count
 II. In January 2013, a division of the court of appeals
 concluded that the original count II sentence was lawful, and
 in June 2015, we affirmed.

Hunsaker v. People, 2015 CO 46, ¶ 40, 351 P.3d
 388, 396. In February 2016, the district court amended the
 mittimus to reinstate the original count II sentence.

 ¶8
 That same month, Hunsaker filed the Crim. P. 35(c) motion for
 postconviction review that is now before this court. He
 argued that his conviction was infirm because the district
 court had violated his rights to a jury trial, to due
 process, and to be free from double jeopardy. Additionally,
 Hunsaker argued that he had received ineffective assistance
 of counsel for several reasons, including because counsel
 failed to object to the imposition of an illegal sentence.
The district court found Hunsaker's motion timely, and
 the prosecution did not argue otherwise. Nonetheless, it
 denied Hunsaker's motion on the merits without a hearing.

 ¶9
 Hunsaker appealed, and the court of appeals affirmed, albeit
 on different grounds. See Hunsaker, ¶ 1, 490
 P.3d at 690. Addressing an argument the prosecution raised
 for the first time on appeal, the division found all but one
 of Hunsaker's arguments time-barred.[1] Id. As
 the division explained, under section 16-5-402(1), most
 felony defendants must file a Crim. P. 35(c) motion

 within three years of the date of their conviction.
Hunsaker, ¶ 13, 490 P.3d at 691. Applying the
 holding of Hampton-that the date of Hunsaker's
 conviction was the date his appeal was exhausted-the division
 determined that the limitations period expired on January 31,
 2014. Id., 490 P.3d at 691-92. Hunsaker had missed
 that deadline because he filed his Crim. P. 35(c) motion on
 February 16, 2016. Id., 490 P.3d at 692.

 ¶10
 The division then asked whether Leyva might
 nonetheless allow Hunsaker's motion to proceed.
Id. at ¶¶ 14-16, 490 P.3d at 692. It
 determined that, under Leyva, correction of an
 illegal sentence allows a defendant to pursue otherwise
 time-barred Crim. P. 35(c) claims "that are related to
 how the illegality in the original sentence potentially
 affected a defendant's original conviction."
Id. at ¶ 16, 490 P.3d at 692. The division
 concluded that only one of Hunsaker's arguments arguably
 fell into this category; namely, that counsel was ineffective
 for failing to object when the court sentenced him for an
 extraordinary risk crime as to count I-the count that was
 found to have included an illegal sentence. Id. at
 ¶ 17, 490 P.3d at 692. Assuming without deciding that
 this claim was timely, the division found that it nonetheless
 failed as a matter of law because the only prejudice Hunsaker
 alleged related to his count II sentence, which was not
 illegal. Id. at ¶¶ 23-29, 490 P.3d at
 693-94.

 ¶11
 In reaching this conclusion, the division of the court of
 appeals here disagreed with another division, which had
 concluded that, under Leyva, correction of an
 illegal sentence renews the limitations period for filing a
 Crim. P. 35(c) motion with regard to all claims. See
Baker, ¶¶ 37-‍42, 461 P.3d at 540.

 ¶12
 Hunsaker filed a petition for certiorari review, which we
 granted.[2]

 II.
Analysis

 ¶13
 After setting out the standard of review, we examine the law
 leading up to our decision in Leyva and acknowledge
 that certain contradictory language in that

 case has caused confusion. We then explain that, although
 Leyva incorrectly stated that a conviction is not
 final until a sentence is lawful, its narrower holding is
 correct: The correction of an illegal sentence allows a
 defendant to subsequently pursue a collateral attack related
 to the illegality in the original sentence. This is true
 because the tardiness of these arguments is justifiably
 excused under section 16-5-402(2)(d). We also
 reaffirm Hampton's conclusion that a
 "conviction" for purposes of section 16-5-402(1)
 occurs once appeal is exhausted.

 ¶14
We then turn to Hunsaker's Crim. P. 35(c) motion, finding
 that it was filed after the deadline established by section
 16-5-402(1), but, because his original sentence was illegal,
 the late filing of arguments related to that illegality is
 permitted by section 16-5-402(2)(d). Because neither the
 district court nor the court of appeals has had an
 opportunity to consider arguments about the applicability of
 section 16-5-402(2)(d) to Hunsaker's other claims under
 the particular circumstances of this case, we remand for
 further proceedings consistent with this opinion.

 A.
Standard of Review

 ¶15
We review questions of statutory interpretation de novo.
People v. Huckabay, 2020 CO 42, ¶ 13, 463 P.3d
 283, 286. In interpreting section 16-5-402, we must give
 effect to the legislature's intent. Hampton, 876
 P.2d at 1239. We begin with the

 plain language of the statute and aim to harmonize the
 procedures applicable to motions under Crim. P. 35.
Leyva, 184 P.3d at 50.

 ¶16
"This court has plenary authority to promulgate and
 interpret the rules of criminal procedure." People
 v. Bueno, 2018 CO 4, ¶ 18, 409 P.3d 320, 325
(quoting People v. Steen, 2014 CO 9, ¶ 10, 318
 P.3d 487, 490 (citing Colo. Const. art. VI, § 21)).
Accordingly, we review constructions of those rules de novo,
 "employing the 'same interpretive rules applicable
 to statutory construction.'" Bueno, ¶
 18, 409 P.3d at 325 (quoting People v. Corson, 2016
 CO 33, ¶ 44, 379 P.3d 288, 297).

 B.
Relevant Legal Principles

 ¶17
 Under Colorado law, individuals convicted of a crime are
 entitled to turn to the courts for various remedies. For
 example, after a trial court enters a judgment of conviction
 and imposes a sentence, the defendant has a right to
 challenge the finding of guilt and the sentence on direct
 appeal. § 16-12-101, C.R.S. (2021). The notice of that
 appeal must be filed within forty-nine days after the entry
 of the order or judgment appealed from. C.A.R. 4.

 ¶18
 Separately, defendants may seek postconviction review of
 either a sentence or a conviction. See §
 18-1-410(1), C.R.S. (2021) (providing that "every person
 convicted of a crime is entitled as a matter of right to make
 applications for postconviction review"). Crim. P. 35
 provides three avenues for this relief.

 ¶19
 First, a defendant may move to correct a sentence "that
 was not authorized by law or that was imposed without
 jurisdiction at any time." Crim P. 35(a). These
 "illegal sentence" claims can encompass a wide
 range of different factual circumstances. Some involve
 allegations like those presented here-that the court imposed
 a prison term longer than is permitted by the applicable
 statute. Others involve claims that the restitution imposed
 was either not permitted or was in the wrong amount, see,
 e.g., People v. Brooks, 250 P.3d 771, 772
(Colo.App. 2010); that sentences that should have been
 imposed to run concurrently were imposed to run
 consecutively, see, e.g., People v. White,
 179 P.3d 58, 60-61 (Colo.App. 2007); or that a sentence to
 mandatory parole was incorrect because the relevant statute
 required discretionary parole, see, e.g., People
 v. Rockwell, 125 P.3d 410, 417 (Colo. 2005). We have
 previously noted that "[s]entences become illegal in
 different ways, and depending on the nature of the
 illegality, certain illegal sentences can be corrected
 through resentencing and imposition of a legal sentence while
 other illegal sentences require that the judgment of
 conviction be vacated." Delgado v. People, 105
 P.3d 634, 637 (Colo. 2005).

 ¶20
 Second, a defendant has eighteen weeks after a series of
 specified events to ask the court to reduce a sentence. Crim.
 P. 35(b). The correction of an illegal sentence pursuant to
 Crim. P. 35(a) restarts the clock for purposes of 35(b).

Delgado, 105 P.3d at 638. This is because the Crim.
 P. 35(b) filing deadline "begins running only after the
 imposition of a legal sentence." Delgado, 105
 P.3d at 638.

 ¶21
 Finally, a defendant can file a postconviction challenge not
 only to the sentence imposed but to the underlying conviction
 itself by filing a Crim. P. 35(c) motion. But to make such an
 application, defendants must file a motion within the time
 limits established by section 16-5-402(1) or show that an
 exception in section 16-5-402(2) applies. Felony
 defendants-except those convicted of class one felonies-have
 three years from the time of their "convictions" to
 file a Crim. P. 35(c) motion unless they can identify an
 exception that permits a later filing.[3] To timely file a
 Crim. P. 35(c) motion, then, defendants must understand when
 their "conviction" occurred for purposes of section
 16-5-402(1).[4]

 ¶22
 In Hampton, we asked whether a
 "conviction" occurs for these purposes after the
 trial court enters a judgment of conviction or after a
 defendant exhausts the appellate process. 876 P.2d at 1237.
We recognized that a defendant has two potentially
 conflicting statutory rights: the right to direct appeal and
 the right to

 postconviction review after the conviction has been affirmed
 on appeal. Id. at 1240-41. If the three-year
 limitations period for collateral attack started running from
 the moment a trial court entered judgment, then a defendant
 might not have time both to appeal and subsequently to seek
 postconviction review. Id. Defendants might thus be
 forced to choose between these two rights-a result both
 unfair and contrary to legislative intent. Id. To
 avoid that result, we interpreted the word
 "conviction" under section 16-5-402(1) to include
 "the time that an appeal is pending."
Hampton, 876 P.2d at 1241. Thus, we held that a
 "conviction" would not occur, and the limitations
 period for seeking postconviction review would not begin to
 run, until a "defendant's appeal ha[d] been
 exhausted." Id.

 ¶23
 Later, in Leyva, we asked whether a
 "conviction" occurs after a defendant's appeal
 was exhausted even if the defendant's sentence was later
 determined to be illegal. 184 P.3d at 50. Recall that, under
 Crim. P. 35(a), a defendant may correct a sentence "that
 was not authorized by law or that was imposed without
 jurisdiction at any time." (Emphasis added.)
Theoretically then, a defendant could exhaust the appellate
 process-rendering their conviction final under
 Hampton-but, many years later, file a motion to
 correct their sentence under Crim. P. 35(a). For instance,
 Leyva's original conviction occurred in 1993; the trial
 court corrected his sentence in 2001; and he sought
 postconviction review in 2004. Leyva, 184 P.3d at
 49. Could a Crim. P. 35(c) motion filed eleven years after
 the

 opportunity to appeal expired still be deemed timely? In
 Leyva, we held that it could, and we reached this
 result by again considering the meaning of the term
 "conviction." Id. at 50-51. We reasoned
 that a conviction for purposes of section 16-5-402(1)
"must refer to a valid, final determination of guilt and
 sentencing, " and an illegal sentence is not
 final because it is subject to correction. Leyva,
184 P.3d at 50. Thus, we concluded that "a judgment
 containing an illegal sentence is . . . not yet a
 'conviction'" for purposes of section
 16-5-402(1). Leyva, 184 P.3d at 50.

 ¶24
Leyva, however, has caused confusion. In that case
we stated, rather broadly, that an illegal sentence would
 "renew[] the three-year deadline for collaterally
 attacking the original judgment of conviction pursuant to
 Crim. P. 35(c)." Id. at 51. But we also stated,
 more narrowly, that "[i]f an illegality is discovered in
 a prisoner's sentence, the prisoner should be allowed to
 pursue any good-faith arguments for postconviction relief
 addressing how that illegality potentially affected his or
 her original conviction." Id. at 50. Because
 Leyva argued that "the late-discovered illegality in his
 sentence help[ed] establish that he received ineffective
 assistance of counsel in entering his guilty plea,"
id., our remand was consistent with both the broader
 statement and the narrower one.

 ¶25
 Hunsaker and the court of appeals in Baker read the
 former language as requiring that correction of an illegal
 sentence restarts the limitations period for

 all arguments a defendant might raise in a collateral
 attack.[5] But the prosecution and the court of
 appeals here rely on the latter language to conclude that
 correction of an illegal sentence only renews the Crim. P.
 35(c) limitations period for arguments related to the
 illegality in the sentence.

 ¶26
We now affirm Leyva's more limited statement and
 disavow the notion that a "conviction" does not
 occur until an illegal sentence is corrected. A defendant who
 successfully corrects an illegal sentence may thereafter
 collaterally attack their conviction, but they may only raise
 arguments addressing how the illegality in the sentence
 potentially affected the original conviction.[6] This is true not
 because a "conviction" for purposes of section
 16-5-402(1) never becomes final until a legal sentence is
 entered but rather because these sorts of arguments are
 properly brought pursuant to section 16-5-402(2)(d), which
 allows for otherwise

 untimely collateral attacks in cases of justifiable excuse
 and excusable neglect. In reaching this conclusion, we
 reaffirm our holding in Hampton-"the meaning of
 the word 'conviction' in section 16-5-402(1) refers
 to a conviction after a defendant's appeal has been
 exhausted." 876 P.2d at 1240.

 ¶27
 In Leyva, we suggested that, just as a trial
 court's entry of judgment is not yet final because it is
 subject to appeal, a conviction containing an illegal
 sentence is not yet final because it is subject to
 correction. 184 P.3d at 50. That reasoning, however,
 overlooked an important distinction between direct appeal and
 correction of an illegal sentence. While direct appeals have
 a determinable end point, arguments that a sentence "was
 not authorized by law" may be brought "at any
 time." Crim. P. 35(a). Thus, if the definition of
 "conviction" for purposes of section 16-5-402(1) is
 tied to a defendant's ability to correct their sentence,
 then the finality of a conviction will always be subject to
 question. In fact, a sentence that had been final for many
 years would suddenly cease to be final.

 ¶28
 In Leyva's case, for example, his conviction became
 final-as we defined that concept in Hampton- in 1993
 when Leyva declined to pursue a direct appeal. See
Leyva, 184 P.3d at 49. He did not challenge the legality
 of his sentence until six years later, and it was only in
 2001 that the court concluded his sentence required
 correction. See id. If we were to maintain the
 broader interpretation of Leyva's holding, we
 would have to conclude that Leyva's conviction had not
 been final

 during any part of that nine-year period and, indeed, that if
 he had not pursued the Crim. P. 35(a) claim, his conviction
 never would have been final because it included an illegal
 sentence. Such a result runs contrary to the purpose of
 section 16-5-402, which is to avoid "the difficulties
 attending the litigation of stale claims and the potential
 for frustrating various statutory provisions directed at
 repeat offenders, former offenders, and habitual
 offenders." § 16-5-402(2).

 ¶29
 Further, this clarification of Leyva's holding
 is consistent with our reasoning in Hampton. There,
 we resolved a potential conflict between two statutory
 rights. Because there is no similar tension between the right
 to collateral attack and the right to correct an illegal
 sentence, an open-ended expansion of the three-year time
 limit established by the legislature for Crim. P. 35(c)
 claims is not warranted.

 ¶30
 Hunsaker argues, however, that the rights to correct an
 illegal sentence and to seek postconviction review do in fact
 conflict. According to Hunsaker, in cases where the
 prosecution appeals a district court's order to correct
 an illegal sentence-as happened here-the district court would
 be divested of jurisdiction over any simultaneously filed
 Crim. P. 35(c) motion during the pendency of that appeal and
 the defendant could thereby lose the right to file a 35(c)
 motion. We disagree for two reasons.

 ¶31
 First, a district court may well retain jurisdiction over
 Crim. P. 35(c) arguments that are unrelated to the illegal
 sentence because the doctrine of

 divestment only prevents a lower court from entering
 "rulings affecting the judgment subject to
 appeal." Sanoff v. People, 187 P.3d 576,
 578 (Colo. 2008) (emphasis added); see also id.
(noting that "the filing of a valid notice of appeal
 does not automatically strip the trial court of jurisdiction
 to take any further action"); People v.
 Stewart, 55 P.3d 107, 126 (Colo. 2002) ("A trial
 court retains jurisdiction to act on matters that are not
 relative to and do not affect the judgment on appeal.");
Molitor v. Anderson, 795 P.2d 266, 269 (Colo. 1990)
("[T]he filing of a notice of appeal divests a trial
 court of authority to consider matters of substance affecting
 directly the judgment appealed from."). Defendants
 seeking postconviction review may raise a wide range of
 arguments unrelated to the sentence imposed, contending, for
 instance, that a conviction is infirm based on prosecutorial
 misconduct; juror misconduct; evidence of actual innocence;
 or violations of a defendant's rights to confrontation,
 to due process, or to be free from double jeopardy, among
 others. Only in limited circumstances will a Crim. P. 35(c)
 motion raise arguments that are related to an illegal
 sentence. See Delgado, 105 P.3d at 637
("Sentences become illegal in different ways, and
 depending on the nature of the illegality, certain illegal
 sentences can be corrected through resentencing and
 imposition of a legal sentence while other illegal sentences
 require that the judgment of conviction be vacated.").

 ¶32
 Second, and perhaps even more important, the possibility that
 a district court might find that it lacks jurisdiction to act
 on a defendant's Crim. P. 35(c) claims does not prevent
 the defendant from timely filing a Crim. P. 35(c) motion.
Section 16-5-402(1) defines when a defendant must file a
 motion for postconviction relief; it says nothing about when
 a court must rule on that motion. Cf. People v.
 Fuqua, 764 P.2d 56, 59 (Colo. 1988) (noting that, under
 Crim. P. 35(b), "a sentencing court is not required to
 rule on the motion for reduction within 120 days after the
 imposition of the original sentence but rather may rule on
 the motion beyond the 120-day period so long as the motion
 itself is filed within 120 days after the imposition of
 sentence"). And there is nothing that would prevent a
 defendant from bringing Crim. P. 35(a) and (c) motions at the
 same time. See, e.g., People v. Fritz, 2014 COA 108,
 ¶ 6, 356 P.3d 927, 929 (defendant files simultaneous
 Crim. P. 35(a) and 35(c) motions); People v.
 Stovall, 2012 COA 7M, ¶ 1, 284 P.3d 151, 152
(same); People v. Wirsching, 30 P.3d 227, 228
(Colo.App. 2000) (same); People v. Montaine, 7 P.3d
 1065, 1066 (Colo.App. 1999) (same); People v.
 Fitzgerald, 973 P.2d 708, 709 (Colo.App. 1998) (same),
 abrogated on other grounds by People v. Subjack,
 2021 CO 10, ¶¶ 25-26, 480 P.3d 114, 119-20;
People v. Greymountain, 952 P.2d 829, 830 (Colo.App.
1997) (same). Neither does a pending appeal on a Crim. P.
 35(a) motion prevent the timely filing of a Crim. P. 35(c)
 motion, particularly given the two types of postconviction
 proceedings have "separate purposes and

 limitations." Rockwell, 125 P.3d at 422 (Coats,
 J., concurring). If a court concludes that it cannot act on
 any of the claims raised in a Crim. P. 35(c) motion during
 the pendency of the Crim. P. 35(a) appeal, the court can hold
 those claims and consider them when the appeal is resolved.
This is in effect what happened in Hunsaker's case when
 the district court found that it would be
 "premature" to consider Hunsaker's Crim. P.
 35(b) claim given the court's order on his Crim. P. 35(a)
 claim, and other district courts have long done the same when
 Crim. P. 35 motions in the district court may affect matters
 on appeal, see, e.g., People v. Griego, No.
 03CR2, 2012 WL 3262296 (Colo. Dist. Ct. June 4, 2012)
(unpublished order) (deciding defendant's Crim. P. 35(b)
 motion only after the conviction was affirmed on appeal
 because, given that the mandate had issued, the district
 court "now ha[d] jurisdiction to rule"); People
 v. Close (Colo. Dist. Ct. No. 90CR3089, Aug. 20, 1996)
(unpublished order) (staying further proceedings on Crim. P.
 35(c) motion pending appeal of Crim. P. 35(b) motion).

 ¶33
 Of course, under section 16-5-402(2)(d), a defendant who
 misses the deadline for filing a Crim. P. 35(c) motion may
 nonetheless seek postconviction review if the "failure
 to seek relief within the applicable time period was the
 result of circumstances amounting to justifiable excuse or
 excusable neglect." And Crim. P. 35(c)(3)(I) explains
 that "[a]ny motion filed outside of the time limits set
 forth in § 16-5-402[] shall allege facts which, if true,
 would establish one of the

 exceptions listed in § 16-5-402(2)[]." The
 justifiable excuse exception to section 16-5-402(1)'s
 time limits "give[s] effect to the overriding
 concern" that, as a matter of due process, defendants
 must have a "meaningful opportunity" to challenge
 their convictions, and it recognizes that strict time limits
 on postconviction review can sometimes undermine any such
 opportunity. People v. Wiedemer, 852 P.2d 424, 441
(Colo. 1993). Accordingly, section 16-5-402(2)(d) allows
 courts to hear otherwise untimely collateral attacks where
 the untimeliness is attributable to justifiable excuse or
 excusable neglect. See People v. Chavez-Torres, 2019
 CO 59, ¶ 14, 442 P.3d 843, 847-48 (explaining that
 several factors are relevant to the justifiable excuse
 analysis, including "whether circumstances or outside
 influences prevented a timely challenge to a
 conviction").

 ¶34
 A court's correction of an illegal sentence is precisely
 the sort of outside circumstance that excuses the untimely
 filing of a collateral attack with regard to claims that the
 illegal sentence rendered the conviction itself infirm.
Cf. Craig v. People, 986 P.2d 951, 966 (Colo. 1999)
(finding that "a plea agreement to reduce or modify the
 statutorily mandated period of parole calls for an illegal
 sentence" and explaining that "[i]f a plea was
 actually induced by such a promise, the defendant must be
 given the opportunity to withdraw the plea"). Indeed,
 until a court agrees that a sentence is illegal, a defendant
 can hardly challenge their conviction for reasons related to
 that illegality. Cf. Delgado, 105 P.3d at 637-38.
And, as we noted

 in Leyva, it would be unfair to prevent a defendant
 from collaterally attacking a conviction for reasons related
 to an illegal sentence simply because that sentence was
 corrected after section 16-5-402(1)'s limitations period
 expired. 184 P.3d at 50. Such a result would undermine the
 legislature's prescription that "every person
 convicted of a crime is entitled as a matter of right to make
 applications for postconviction review." §
 18-1-410(1). Accordingly, the late filing of a collateral
 attack related to the illegality in a sentence is permitted
 under the justifiable excuse exception when the court
 corrects an illegal sentence pursuant to Crim. P. 35(a).

 ¶35
 But the court's correction of an illegal sentence cannot
 excuse the defendant's failure to timely bring a
 collateral attack unrelated to that illegality. Those
 arguments were always available to the defendant, regardless
 of whether the court would eventually correct the sentence.

 C.
Application

 ¶36
 For purposes of section 16-5-402(1), Hunsaker's
 conviction became final on January 31, 2011, when he
 exhausted direct appeal and the mandate issued affirming his
 conviction. But Hunsaker did not file his Crim. P. 35(c)
 motion until February 16, 2016-well past his three-year
 deadline. Accordingly, Hunsaker's motion is untimely, and
 it cannot proceed unless an exception under section
 16-5-402(2) applies.

 ¶37
 Hunsaker's original sentence was illegal, and the
 district court amended the mittimus to reflect the proper
 sentence in February 2016. Before this time-when the court
 entered the final, lawful sentence-Hunsaker was justifiably
 excused for not raising a collateral attack related to the
 illegality in his sentence.[7] As such, the court can hear
 Hunsaker's otherwise time-barred Crim. P. 35(c) motion to
 the extent it presses arguments related to the illegality in
 his original sentence.

 ¶38
 Hunsaker's Crim. P. 35(c) motion raises several
 arguments. First, he contends that the trial judge violated
 his due process rights because, after his counsel and the
 prosecution raised the issue of Hunsaker's competence,
 the court failed to follow statutory requirements for
 assessing a defendant's competence and allowed Hunsaker
 to be tried, convicted, and sentenced without any competency
 determination. Second, Hunsaker argues that the court
 violated his right to a jury trial by imposing a sentence
 beyond the maximum in the presumptive range without a jury
 finding of aggravating circumstances. Third, he argues that
 the court violated his right to be free from double jeopardy
 by increasing his sentence after he completed the minimum
 term and was released

 on parole. And finally, he maintains that he received
 ineffective assistance of counsel because counsel (1) failed
 to adequately prepare for trial; (2) advised Hunsaker to flee
 the jurisdiction; (3) had a conflict of interest; (4) failed
 to attend trial and sentencing; (5) failed to handle
 Hunsaker's competency appropriately; and (6) failed to
 object to the imposition of sentences for extraordinary risk
 crimes.

 ¶39
 Hunsaker has asserted on appeal that each of these arguments
 is "related to" the illegality in his sentence
 because (1) the court that erred when sentencing him is the
 same court that erred by violating his due process rights,
 right to a jury trial, and right to be free from double
 jeopardy; (2) had the court sentenced him correctly in the
 first place, he never would have had to pursue a Crim. P.
 35(a) motion and would have instead moved directly to
 collateral attack; and (3) counsel's ineffective
 assistance at sentencing is tied together with all of the
 instances where counsel was allegedly ineffective. But
 Hunsaker pushes Leyva too far.

 ¶40
 In assessing Hunsaker's six arguments, the court of
 appeals correctly determined that the only one that relates
 to the illegality in Hunsaker's original sentence is the
 argument that counsel was deficient for failing to object to
 the imposition of an extraordinary risk sentence for count I.
 Hunsaker's other five arguments address counsel's
 performance and the court's errors leading up to and
 during trial, violation of Hunsaker's right to a jury
 trial, and error related to the

 reinstatement of his count II sentence, which was actually
 lawful. Because such arguments are unrelated to the
 illegality in Hunsaker's count I sentence, their late
 filing cannot be excused by the correction of Hunsaker's
 sentence.

 ¶41
 Under the particular circumstances of this case, however,
 these arguments also may fall within section
 16-5-402(2)(d)'s justifiable excuse and excusable neglect
 exception. Hunsaker seems likely to have relied on the
 language in Leyva that we have now disavowed in
 delaying the filing of his Crim. P. 35(c) motion. This point,
 however, was not argued in the courts below, and we decline
 to address it now. Instead, we remand for further proceedings
 consistent with this opinion, including proceedings relevant
 to the applicability of section 16-5-402(2).

 III.
Conclusion

 ¶42
 For these reasons, we affirm the decision of the court of
 appeals and remand the case for further proceedings
 consistent with this opinion.

 JUSTICE GABRIEL dissents, and CHIEF JUSTICE BOATRIGHT joins
 in the dissent.

 JUSTICE GABRIEL, dissenting.

 ¶43
 Today, the majority concludes that (1) the time for filing a
 postconviction motion under Crim. P. 35(c) begins to run upon
 the entry of the mandate after a defendant's direct
 appeal, even if the defendant's sentence was illegal; and
 (2) the correction of a defendant's illegal sentence
 resets the time period for filing a Crim. P. 35(c) motion
 only for those claims that relate to how the sentence
 illegality may have affected the defendant's original
 conviction. Maj. op. ¶¶ 3, 26, 36. Because the
 majority's decision is inconsistent with this court's
 longstanding precedent, most notably our decision in
 Leyva v. People, 184 P.3d 48 (Colo. 2008), and
 because, unlike the majority, I perceive no reason to depart
 from that settled precedent, I respectfully dissent.

 I.
Factual Background

 ¶44
 The majority has adequately laid out the pertinent facts, and
 I need not repeat that recitation here. I, however, emphasize
 three facts that I deem particularly pertinent to my
 analysis.

 ¶45
 First, a mandate reflecting a completely legal sentence did
 not enter in this case until August 6, 2015, and Hunsaker
 filed his Crim. P. 35(c) motion six months later, on February
 16, 2016.

 ¶46
 Second, the People did not argue in the postconviction court
 that Hunsaker's Crim. P. 35(c) motion was untimely, and
 the court expressly found

 that Hunsaker's motion was timely filed. This conclusion
 made perfect sense, given that the postconviction court had
 previously ruled, "[B]ecause the time period for filing
 a motion to reconsider a sentence does not begin to run until
 the imposition of a legal sentence, the Court will withhold
 as premature any ruling on the Defendant's [alternative
 motion under Crim. P. 35(b) for a sentence reduction] at this
 time." Hunsaker reasonably relied on this statement in
 waiting to file his Crim. P. 35(c) motion.

 ¶47
 Third, in their answer brief in the court of appeals, the
 People argued, for the first time, that Hunsaker's motion
 was untimely as to claims unrelated to the potential effect
 of his illegal sentence on his original judgment of
 conviction, and the division ultimately agreed.

 II.
Analysis

 ¶48
 I begin by discussing Leyva, and I explain why the
 court's decision today is inconsistent with that
 longstanding precedent. I then explain why I believe the
 majority errs in concluding that the time for filing a Crim.
 P. 35(c) motion begins to run upon the entry of the mandate
 after a direct appeal, even if the defendant's sentence
 was illegal. I end by expressing my view that even if
 Hunsaker filed any of his Crim. P. 35(c) claims late, then,
 on the undisputed facts of this case, justifiable excuse and
 excusable neglect are manifest, and for that reason as well,
 Hunsaker should be permitted to pursue all of his Crim. P.
 35(c) claims.

 A.
 Leyva

 ¶49
 In Leyva, 184 P.3d at 49, we granted certiorari to
 consider "whether the entry of an amended judgment of
 conviction, correcting a prisoner's sentence on one
 count, renewed the three-year deadline for bringing a
 collateral attack pursuant to Crim. P. 35(c) regarding the
 original judgment of conviction." We ultimately held:

[B]ecause Defendant Joshua Leyva's original judgment of
 conviction contained an illegal sentence on one count, the
 entire sentence was illegal. The sentence was therefore
 subject to correction and the judgment of conviction was
 subject to amendment, such that the judgment of conviction
 was not final or fully valid. Accordingly, the three-year
 deadline for bringing a Crim. P. 35(c) motion regarding the
 original conviction was not triggered until Leyva's
 sentence was corrected, and his judgment of conviction
 amended.

Id.

 ¶50
 In reaching this conclusion, we recited several longstanding
 principles of law that, at least until today, I thought were
 incontrovertible. Specifically, we observed that we had
 previously considered the meaning of the term
 "conviction," as that term is used in section
16-5-402(1), C.R.S. (2021), and had concluded that the term
 "refers to a conviction after a defendant's appeal
 has been exhausted." Id. at 50 (quoting
People v. Hampton, 876 P.2d 1236, 1240 (Colo.
1994)). We went on to say, contrary to the majority's
 opinion today, that "the term 'conviction' as it
 is used in section 16-5-402(1) does not simply refer to the
 initial entry of a judgment of conviction. Rather, the term
 'conviction' must refer to a valid, final
 determination of guilt and sentencing."
Id. (emphasis added). We then said that the fact
 that

 Leyva's original judgment of conviction included an
 illegal sentence "rendered illegal the entire sentence,
 on all counts, contained in the judgment." Id.
And because the judgment contained an illegal sentence,
 "it was no more valid or final than a judgment that is
 still subject to appeal." Id. In other words,
 the judgment was not yet a "conviction" within the
 meaning of section 16-5-402(1). Id.

 ¶51
 In light of the foregoing, we concluded, "[W]hen an
 illegal sentence is corrected pursuant to Crim. P. 35(a), it
 renews the three-year deadline for collaterally attacking the
 original judgment of conviction pursuant to Crim. P.
 35(c)." Id. at 50-51. We therefore remanded the
 case for consideration of all of Leyva's Crim. P. 35(c)
 claims, even though his sentence was deemed illegal as to
 only one count. Id. at 49-51.

 ¶52
 In my view, our decision in Leyva resolves the issue
 now before us. Here, as in Leyva, Hunsaker's
 original sentence was illegal in part. This, in turn,
 rendered illegal Hunsaker's entire sentence on all
 counts, such that the judgment against him was not fully
 valid or final and was therefore not yet a
 "conviction" for purposes of section 16-5-402(1).
See Leyva, 184 P.3d at 50. Indeed, for the reasons
 set forth in Leyva, Hunsaker did not have a fully
 valid or final conviction until August 6, 2015, when a
 mandate first issued reflecting a completely legal sentence.
It was only then that a "conviction" for purposes
 of section 16-5-402(1) entered, and it was only then that
 Hunsaker's time to file a Crim. P. 35(c) motion began to

 run. See Leyva, 184 P.3d at 50-51. Thus, in my view,
 all of Hunsaker's Crim. P. 35(c) claims were timely
 filed.

 ¶53
 I am not persuaded otherwise by the majority's (and the
 division's) reliance on the statement in Leyva
 that, "[i]f an illegality is discovered in a
 prisoner's sentence, the prisoner should be allowed to
 pursue any good-faith arguments for postconviction relief
 addressing how that illegality potentially affected his or
 her original conviction." Id. at 50. There, we
 were not distinguishing between Crim. P. 35(c) claims that
 were related to the illegality and claims that were not.
Indeed, were that what we intended, we would not have
 remanded the case with instructions to allow Leyva to pursue
 all of his Crim. P. 35(c) claims, whether they related to the
 illegality or not. See People v. Baker, 2017 COA
 102, ¶¶ 40-41, 461 P.3d 534, 540, rev'd on
 other grounds, 2019 CO 97M, 452 P.3d 759. We did so
 based on our conclusion that no "conviction" had
 entered until after the correction of the illegal sentence,
 Leyva, 184 P.3d at 50, and that principle should
 apply in the present case as well.

 ¶54
 A number of troubling consequences flow from the
 majority's decision to depart from Leyva.

 ¶55
 First, section 16-5-402(1) sets the time limit for a
 postconviction challenge based on the date of
 "conviction," and, as noted above, a
 "conviction" has long been understood to refer to a
 final and valid conviction. See, e.g.,
 Leyva 184 P.3d at

 50. Section 16-5-402(1) does not provide one timeline for
 valid convictions and another timeline for invalid
 convictions, but the majority effectively rewrites the
 statute to create such a distinction. This, however, is not a
 court's proper role.

 ¶56
 Our decision in Hampton, on which the majority
 extensively relies, is not to the contrary. The issue before
 us in Hampton, 876 P.2d at 1237, was whether the
 time limits imposed by section 16-5-402(1) begin to run after
 the conviction in the trial court or after the appellate
 process has been exhausted, when a direct appeal has been
 filed. Answering the question before us, we concluded that
 the term "conviction" in section 16-5-402(1) refers
 to a conviction after a defendant's appeal has been
 exhausted (as distinguished from the conviction in the trial
 court). Hampton, 876 P.2d at 1240. Hampton
 did not consider the question presented in this case, namely,
 how to construe the term "conviction" when the
 initial judgment was illegal in part. Leyva,
 however, directly addressed that question. Accordingly, in my
 view, Leyva, and not Hampton, should
 control here.

 ¶57
 Second, the majority's ruling creates substantial
 uncertainty as to the timeline for filing a Crim. P. 35(c)
 motion. Must defendants with legitimate illegal sentence
 claims file postconviction motions before knowing what their
 proper sentences are (i.e., before knowing what their
 judgments of conviction are)? And when, exactly, is a claim
 related to the illegality? The majority's decision
 invites

 litigation on a wealth of new issues, in direct contravention
 of the majority's purported concern for finality.
See maj. op. ¶ 27.

 ¶58
 Third, the majority's ruling today ensures piecemeal
 Crim. P. 35(c) litigation in any case involving an illegal
 sentence claim, again in direct contravention of the
 majority's stated concern for finality, not to mention
 Crim. P. 35(c)'s express prohibition on successive
 motions. See Crim. P. 35(c)(3)(VI)-(VII). In
 addition, the majority now effectively requires a
 postconviction claimant to file a placeholder Crim. P. 35(c)
 motion, while simultaneously pursuing relief under Crim. P.
 35(a) in the appellate courts. Maj. op. ¶ 32. I am not
 aware of any precedent or rule supporting such a procedure,
 nor do I perceive a persuasive justification for it. Although
 the majority appears to impose this requirement in order to
 address its concern for "stale claims,"
id. at ¶ 28, filing a placeholder motion and
 then waiting, perhaps years, for simultaneous Crim. P. 35(a)
 proceedings to conclude does nothing to alleviate that
 concern. Instead, such a procedure introduces unnecessary
 complexity and duplication of effort, with the attendant
 risks of creating traps for the unwary and inviting
 conflicting rulings from different courts.

 ¶59
 Finally, in my view, the majority effectively overrules the
 principal holding in Leyva without even a mention of
 the settled principles of stare decisis. Contrary to the
 People's exposition of the parade of horribles that would
 result from adherence to Leyva, that decision has
 been on the books for over a decade without

 adverse consequences of which I am aware. I perceive no basis
 to dispose of a clear, longstanding, and well-working rule in
 favor of a rule that I believe will engender confusion and
 additional litigation for years to come.

 ¶60
 I likewise am unpersuaded by the People's suggestion that
 the conclusion that I would reach today would result in the
 possibility of a renewed Crim. P. 35(c) deadline many years
 down the road, at the risk of great prejudice to the People.
In my view, the likelihood of the scenario that the People
 portend is remote because it presumes that postconviction
 claimants will delay filing Crim. P. 35(c) motions in the
 hope that, someday, they may have an argument that their
 sentences were illegal. Assuredly, convicted defendants will
 not sit in prison, holding back Crim P. 35(c) claims in the
 hope of raising them sometime in the unforeseeable future.
Moreover, because successful Crim. P. 35(a) claims are rare,
 I would anticipate that those convicted of crimes will
 ordinarily file Crim. P. 35(c) claims within the three-year
 limitations period, unless, perhaps, they have a
 then-existing Crim. P. 35(a) claim. In that case, it would
 make sense for these claimants to wait, so that they would
 not be forced to collaterally attack their judgments of
 conviction before even knowing what those judgments are.

 ¶61
 Nor am I persuaded by the People's related contention
 that applying Leyva in cases like this may create a
 scenario in which the People will be unable to defend against
 long-delayed Crim. P. 35(c) claims. Again, in my view, the
 likelihood of

 such claims is remote. Moreover, the consequences of such a
 delayed filing would likely impose more of a burden on
 postconviction claimants than on the People, because such
 claimants may find it difficult, if not impossible, to prove
 their Crim. P. 35(c) claims long after the fact.

 ¶62
 For these reasons, I would adhere to Leyva and
 conclude that the correction of an illegal sentence resets
 the three-year deadline for filing a Crim. P. 35(c) motion
 attacking the original judgment of conviction. Accordingly, I
 would conclude that each of Hunsaker's Crim. P. 35(c)
 claims was timely filed, and I would allow Hunsaker to pursue
 those claims.

 B.
Date of "Conviction"

 ¶63
 For the same reasons, I also disagree with the majority's
 view that the date of Hunsaker's conviction for purposes
 of section 16-5-402(1) was January 31, 2011, the date the
 mandate affirming Hunsaker's conviction on direct appeal
 issued, even though that mandate included an illegal
 sentence. See maj. op. ¶ 36. As noted above, as
 of the issuance of that mandate, Hunsaker's conviction
 was "neither fully valid nor final,"
Leyva, 184 P.3d at 50, and it makes no sense to me
 to start running the time to file a postconviction motion
 before a valid and final judgment has entered. Postconviction
 claimants simply should not be required to challenge their
 judgments of conviction until all parts of those judgments
 are legal and finally determined.

 ¶64
 In so concluding, I am not persuaded by the majority's
 assertion that the principle that we articulated in
 Leyva is problematic because it would suggest that
 "a sentence that had been final for many years would
 suddenly cease to be final." Maj. op. ¶ 27. In so
 stating, the majority simply assumes its conclusion, namely,
 that an illegal sentence can be a final sentence. Unlike the
 majority, I am not troubled by a rule providing that a
 sentence is not final until it is legal. Indeed, that is
 precisely why our criminal procedure rules allow a defendant
 to challenge an illegal sentence at any time. Crim. P. 35(a).
And to the extent that finality is delayed for whatever time
 it may take to correct an illegal sentence, I perceive no
 basis to hold that delay against the defendant, who was
 forced to endure the illegal sentence, perhaps for a lengthy
 period of time.

 C.
Justifiable Excuse or Excusable Neglect

 ¶65
 Lastly, even were I to agree with the majority that most of
 Hunsaker's Crim. P. 35(c) claims were somehow untimely, I
 would conclude, unlike the majority, maj. op. ¶ 41,
 that, on the undisputed facts of this case, justifiable
 excuse and excusable neglect are manifest and Hunsaker should
 therefore be permitted to pursue those claims.

 ¶66
 Under section 16-5-402(2)(d), the three-year deadline for
 collaterally attacking a conviction does not apply
 "[w]here the court hearing the collateral attack finds
 that the failure to seek relief within the applicable time
 period was the

 result of circumstances amounting to justifiable excuse or
 excusable neglect." In determining whether a defendant
 has demonstrated justifiable excuse or excusable neglect,
 courts must examine the particular facts of the case so as to
 effectuate the overriding concern that defendants have a
 meaningful opportunity to challenge their convictions.
Close v. People, 180 P.3d 1015, 1019-20 (Colo. 2008)
(noting the non-exhaustive list of factors that courts should
 consider in addressing the issue of justifiable excuse or
 excusable neglect under section 16-5-402).

 ¶67
 Here, for two reasons, I believe that any untimeliness by
 Hunsaker was the product of justifiable excuse or excusable
 neglect.

 ¶68
 First, in filing when he did, Hunsaker relied on our
 unequivocal conclusion in Leyva, 184 P.3d at 50-51,
 that "when an illegal sentence is corrected pursuant to
 Crim. P. 35(a), it renews the three-year deadline for
 collaterally attacking the original judgment of conviction
 pursuant to Crim. P. 35(c)." Unlike the majority, I am
 unwilling to fault Hunsaker for relying on our own clear and
 unconditional statement of the law.

 ¶69
 Second, as noted above, the postconviction court specifically
 advised Hunsaker that it deemed premature any ruling on a
 time-limited postconviction motion while Hunsaker's
 motion to correct his illegal sentence was pending. In my
 view, Hunsaker reasonably interpreted this statement as
 applying to his Crim. P. 35(c) motion as well, and it would
 be manifestly unfair to preclude

 Hunsaker from pursuing his Crim. P. 35(c) claims when he
 delayed filing those claims in compliance with the
 postconviction court's ruling.

 ¶70
 I would therefore conclude that even if Hunsaker's Crim.
 P. 35(c) motion were untimely, his delay in filing was the
 product of justifiable excuse or excusable neglect, and for
 that reason as well, he should be permitted to pursue his
 Crim. P. 35(c) claims here.

 III.
Conclusion

 ¶71
 For these reasons, I believe that Hunsaker timely filed all
 of his Crim. P. 35(c) claims, and even if he somehow did not,
 any untimeliness was the product of justifiable excuse or
 excusable neglect. Accordingly, I would reverse the judgment
 of the division below and conclude that Hunsaker may pursue
 all of his Crim. P. 35(c) claims in this case.

 ¶72
 I therefore respectfully dissent.

 ¶73
 I am authorized to state that CHIEF JUSTICE BOATRIGHT joins
 in this dissent.

---------

Notes:

[1] Under section 16-5-402(1.5), an
 appellate court may deny a motion for postconviction relief
 as untimely based on "the face of the motion, files, and
 record in a case . . . regardless of whether the issue of
 timeliness was raised in the trial court."

[2] We granted certiorari to review the
 following issues:

1. Whether the court of appeals erred in holding that
 when an illegal sentence is corrected pursuant to Crim. P.
 35(a), it only renews the three-year deadline for
 collaterally attacking the original judgment of conviction
 for claims related to how the illegality in the original
 sentence potentially affected the original conviction,
 directly in conflict with its holding in People v.
 Baker, 2017 COA 102, rev'd on other
 grounds, 2019 CO 97M, 452 P.3d 759 (Colo. 2019).

21. [REFRAMED] Whether the court of appeals erred in
 holding that the date of conviction was, for purposes of
 postconviction relief under section 16-5-402(1), C.R.S.
(2020), the date of the mandate affirming petitioner's
 conviction, where the judgment of conviction was corrected
 pursuant to Crim. P. 35(a) but only one of the claims
 asserted in a later-filed Crim. P. 35(c) motion relates to
 the illegality in the original sentence.

[3] Individuals convicted of a class one
 felony may pursue postconviction review any time after their
 conviction. § 16-5-402(1).

[4] The term "conviction" can
 have different meanings in different contexts, see
Hampton, 876 P.2d at 1239, and here we address only the
 meaning of that term with reference to section
 16-5-402(1).

[5] The court of appeals division in
 Baker relied on our remand for general consideration
 of the ineffective assistance claim as evidence that
 Leyva could only stand for the broader proposition
 that the Crim. P. 35(c) clock is reset as to all claims.
Baker, ¶ 41, 461 P.3d at 540. The
 Baker division overlooked the fact that Leyva's
 claim was that his counsel's failure to properly advise
 him about the possible length of the entire sentence led him
 to accept a plea deal that he otherwise would not have
 accepted. See Leyva, 184 P.3d at 49. The general
 challenge therefore was related to the illegality in his
 sentence. Leyva did not seek to raise a host of Crim. P.
 35(c) claims entirely unrelated to his sentence as Hunsaker
 does here.

[6] Of course, if the limitations period
 for seeking postconviction relief has not yet otherwise run,
 the defendant may raise all appropriate arguments.

[7] It makes no difference that, at this
 point, the court reinstated the original count II sentence.
It was not until the prosecution's Crim. P. 35(a) appeal
 was complete that Hunsaker could know to what extent his
 sentence was illegal and thus understand what sort of related
 collateral attack he could mount.

---------